STATE of Maine

v.

Gordon C. LEDGER.

Supreme Judicial Court of Maine.

Argued Sept. 4, 1991.
Decided Nov. 20, 1991.

---

Neale T. Adams (orally), Dist. Atty., Caribou, for the State.

E. Allen Hunter (orally), Solman & Hunter, P.A., Caribou, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

GLASSMAN, Justice.

Gordon C. Ledger appeals from the judgment entered in the Superior Court (Aroostook County, *Pierson, J.*) on a jury verdict finding him guilty of manslaughter in violation of 17–A M.R.S.A. § 203 (1983 & Supp. 1989).[1] Contrary to Ledger's contention, we find the evidence is sufficient to support the conviction, and we affirm the judgment.

## I.

The jury heard the following evidence: On July 21, 1989, Ledger, who had worked as a truck driver hauling wood for about three years and had been driving this particular tractor trailer for 3 to 4 months, supervised the loading of 20– to 40–foot spruce logs lengthwise on the trailer by Jay Welton. At some point, Ledger signalled to Welton to quit loading. Ledger bound the load with a racheting device and cable, typically used to compress a load. Neither Ledger nor Welton measured the height of the load.

At approximately 5:00 p.m. Betty Gray was driving her station wagon north on Route 1 in Houlton during heavy traffic with her thirteen-year-old son Andrew as a passenger. As she approached the I–95 overpass at approximately twenty-five miles per hour, she drew to within 1½ to 2 car lengths behind the Ledger vehicle when part of its load struck the overpass and several logs came off the trailer. One of the logs hit the hood of the Gray station wagon, pierced the windshield and struck and killed Andrew Gray. A short distance north of the overpass the Ledger vehicle was flagged down by the driver of another vehicle. When the police arrived at the scene, the Gray vehicle was parked on the northbound lane with a log projecting from the windshield on the passenger side and pinned against the overpass. Two logs were on the roadway near the driver's side of the Gray vehicle and a third log was on the edge of the northbound lane slightly north of the overpass. The three cables used by Ledger to secure the load on his vehicle were broken and located to the side of his vehicle.

The height of the overpass was not posted. State Police Officer Linwood Hersey testified that the grade of the northbound roadway under the overpass was relatively level. Officer Hersey located the spot where he believed the log from the Ledger vehicle had struck the "I" beam in the overpass. His measurements disclosed that the distance from the underside of that beam to the roadway was 14 feet 11¼ inches and the height of the unbound load remaining on the trailer was 14 feet 6½ inches. He also testified that the legal height for the structure of a vehicle is 13 feet 6 inches and that a legal load on such vehicle may extend 6 inches beyond the structural height to a legal limit of 14 feet. Further, the height of a wooden stake located on the left front side of the trailer, which was used as a measure to determine the structural height of the vehicle and to allow the loader to gauge the extent the load could legally exceed that structural height, was 13 feet 8½ inches. Jay Welton, the individual who had assisted Ledger in loading the trailer, testified that "[t]he load

---

[1]. 17–A M.R.S.A. § 203 provided in pertinent part:
 1. A person is guilty of manslaughter if he:
 A. Recklessly, or with criminal negligence, causes the death of another human being;
 . . . .

 (3)(A) Manslaughter is a Class B crime if it occurs as a result of the reckless or criminally negligent operation of a motor vehicle.
 The present language of subsection 3(A) became effective July 14, 1990. *See* P.L.1989, ch. 872, § 1.

looked okay when I finished loading." Houlton police officer Edward Archer, the primary investigator of the accident, testified that Welton had arrived at the scene of the accident shortly after its occurrence and in response to Archer's inquiry had stated that when the load left the woods "he [Welton] felt that it was somewhat over height." Several photographs taken immediately following the accident, depicting the scene of the accident, the dislodged logs, and the Gray and Ledger vehicles, were admitted in evidence.

Ledger did not testify and called no witnesses in his defense. From the judgment entered on the jury's verdict finding Ledger guilty of manslaughter, Ledger appeals.

## II.

■ Although Ledger concedes that a log on his trailer struck the overpass causing the death of Andrew Gray, his challenge to the sufficiency of the evidence to support the jury verdict focuses on the claimed failure of the State to establish the *mens rea* element of the offense of manslaughter. Accordingly, we view the evidence in the light most favorable to the State to determine whether based on that evidence the jury rationally could have found beyond a reasonable doubt every element of the offense charged. *State v. Barry*, 495 A.2d 825, 826 (Me.1985). For a person to be guilty of manslaughter the State must prove beyond a reasonable doubt that the person "[r]ecklessly, or with criminal negligence, cause[d] the death of another human being." 17–A M.R.S.A. § 203(1)(A). The terms "recklessly" and "criminal negligence," as defined in 17–A M.R.S.A. § 35 (1983), identify the accused's culpable mental state that the State must prove as an element of manslaughter. Whether the charged conduct is grounded on the accused having acted recklessly or with criminal negligence, the State must prove beyond a reasonable doubt that such conduct "involve[d] a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." *Id.*, subsections (3)(C) and (4)(C).

■ Here, the nature and size of the load Ledger caused to be placed on his trailer and the measures taken by him, if any, to assure the load's safe transport over the route chosen by Ledger are factors properly to be considered by the jury in determining the degree of any risk of misadventure and the degree of the seriousness of any consequences from that risk that could flow from these activities. Primarily, it is not the nature of the activity that distinguishes criminal negligence from simple negligence; rather, it is the degree of departure from the conduct of a reasonable and prudent person. Obviously, certain activities involve greater risks of misadventure than others, and hauling logs ranks high on the scale. When logs are hauled over a heavily traveled roadway, the potential for serious consequences of any misadventure is increased substantially. In the present case, the jury was entitled to find that Ledger allowed his load to exceed the limit for maximum height by nearly a foot and then knowingly or carelessly encountered a low overpass on a heavily traveled highway. That significant departure adequately supports the jury's conclusion that Ledger's conduct was a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

The entry is:

Judgment affirmed.

All concurring.