2014 ME 82

**Nicholas STEIN**

v.

**MAINE CRIMINAL JUSTICE ACADEMY.**

**Docket No. Cum–13–466.**

Supreme Judicial Court of Maine.

Argued: May 14, 2014.
Decided: June 24, 2014.

hell."

Kristine C. Hanly, Esq. (orally), Portland, for appellant Nicholas Stein.

Janet T. Mills, Attorney General, and Dennis E. Smith, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, on the briefs, for appellee Maine Criminal Justice Academy.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1] Nicholas Stein appeals from an order of the Superior Court (Cumberland County, *Warren, J.*) affirming the decision by the Maine Criminal Justice Academy Board of Trustees to suspend for one year Stein's certificate of eligibility to act as a corrections officer. Stein challenges the sufficiency of the evidence supporting the Board's finding that he committed an assault against an inmate at the Cumberland County Jail. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Nicholas Stein worked as a corrections officer at the Cumberland County Jail for about twelve years before this incident. On June 17, 2011, while Stein was working an overtime shift, an inmate housed in the 72–hour pod[1] threatened to commit suicide. Stein offered to assist the pod supervisor with removing the suicidal inmate from the pod.

[¶ 3] While Stein and the pod supervisor were attempting to speak with the suicidal inmate and remove him from his cell, another inmate entered the pod and went up a set of stairs to the second-floor tier, where his cell was located. Stein and the pod supervisor were the only officers on duty in the pod, so the pod supervisor instructed the inmate to wait outside his cell until it could be unlocked. The inmate became agitated, climbed onto the second-floor railing, and threatened to commit suicide by jumping to the concrete below. Stein attempted to engage with the inmate telling him that if he jumped he would only succeed in breaking his ankles.

[¶ 4] The inmate jumped feet first landing directly in front of Stein. Stein heard the sound of bones breaking as the inmate fell to the ground. Stein immediately handcuffed the inmate's hands toward the front. Although both Stein and the pod supervisor were carrying radios, neither called for medical assistance as required by jail policy. Instead, Stein, who had successfully completed 124 hours of training as a Basic Emergency Medical Technician, grabbed the inmate's shirt by the back of the collar and dragged the inmate, who was lying on his back, toward the medical department. The pod supervisor used his radio to call sub-control and requested that the door to the pod be unlocked. As Stein dragged the inmate toward the medical unit, he had to stop at the locked door to the 72–hour pod; however, sub-control opened it almost immediately when he reached it. The distance from the spot where the inmate landed to the pod door was about twenty or twenty-five feet. As Stein continued to drag the inmate toward an observation cell in the medical department, the inmate's pants were dragged down so that the inmate's bare skin was in contact with the ground. Another corrections officer described the sound of the inmate being dragged as similar to the sound of sneakers on a gym floor.

[¶ 5] The total distance Stein dragged the inmate was 127 feet, which took forty-six seconds. During that time, the inmate was screaming and crying in pain, complaining that his ankles hurt. Neither the pod supervisor nor any one of the several other corrections officers who saw Stein dragging the inmate down the hallway attempted to stop him. Once they arrived in the medical unit, Stein placed the inmate on an observation mattress on the floor and loosened the inmate's handcuffs because they appeared to be too tight.

[¶ 6] The inmate suffered two broken ankles as a result of the jump. He also had abrasions on his hip, which he claimed resulted from being dragged across the floor. However, the direction of the marks appeared to be inconsistent with the direction in which Stein dragged him, and another officer overheard the inmate say that the injury was a result of being dragged on the ground behind an automobile several days prior to his incarceration.

[¶ 7] Stein's employment was terminated as a result of this incident. He was

---

1. The 72–hour pod serves primarily as temporary housing for inmates awaiting classification.

charged with assault (Class D), 17-A M.R.S. § 207(1)(A) (2013), in August 2011. The Board of Trustees of the Maine Criminal Justice Academy, which is responsible for certifying and disciplining corrections officers, *see* 25 M.R.S. § 2801(2) (2013), notified Stein in October 2011 that it was investigating the incident. In December 2011 the Board informed Stein that it had voted to revoke his corrections-officer certificate. Stein appealed that decision by requesting a hearing pursuant to 25 M.R.S. § 2806(2)(A)(1) (2012).[2] Meanwhile, in March 2012, Stein was acquitted of the criminal assault charge following a jury trial. Stein was reinstated to his position at the jail by an arbitrator in June 2012.

[¶ 8] In May and June of 2012, a two-day hearing concerning the status of Stein's corrections-officer certification was held before a hearing officer. In August 2012, the hearing officer issued his Recommended Decision, in which he determined by a preponderance of the evidence that Stein had committed assault against the inmate. Specifically, the hearing officer found that Stein recklessly caused bodily injury or offensive physical contact, and that this conduct constituted a gross deviation from the standard of conduct that a reasonable and prudent person would observe under the circumstances. However, the hearing officer concluded that a full revocation was not warranted and instead recommended that Stein's certificate be suspended for one year. The Board issued a final decision adopting the hearing officer's recommendation and findings in September 2012.

[¶ 9] Stein appealed the suspension to the Superior Court pursuant to M.R. Civ. P. 80C. The suspension of Stein's certificate was stayed automatically pursuant to 25 M.R.S. § 2806(3-A) (2012).[3] The Superior Court affirmed the Board's decision in September 2013. Stein filed a notice of appeal on October 7, 2013, and we granted his motion to stay the suspension of his certificate pending the outcome of this appeal.

## II. DISCUSSION

[¶ 10] The Board of Trustees of the Maine Criminal Justice Academy serves to "protect the public health and welfare" by "ensuring that the public is served by competent and honest criminal justice practitioners and by establishing minimum standards of proficiency in the [criminal justice] professions by examining, licensing, regulating and disciplining practitioners of those regulated professions[,]" including corrections officers, criminal justice executives, harbor masters, judicial marshals, law enforcement officers, and transport officers. 25 M.R.S. §§ 2801(2), 2803-A. A corrections officer must possess a current and valid certificate of eligibility issued by the Board. 25 M.R.S. §§ 2801-A(2), 2804-D(1) (2013). At the time of Stein's administrative appeal, 25 M.R.S. § 2806(1) (2012) provided, in relevant part:

The board of trustees:

. . . .

B. May suspend or revoke the certificate . . . of any person who:

. . . .

(2) Has engaged in conduct that is prohibited or penalized by state law as murder or a Class A, Class B, Class C or Class D crime or a violation of any

---

2. This section was repealed and replaced by P.L.2013, ch. 147, §§ 38, 39 (effective October 9, 2013) (codified at 25 M.R.S. § 2806-A (2013)).

3. This section was repealed and replaced by P.L.2013, ch. 147, §§ 38, 39 (effective October 9, 2013) (codified at 25 M.R.S. § 2806-A (2013)).

provision of the Maine Criminal Code, chapter 15, 19, 25 or 45.

## A.  The Board's Findings

[¶ 11] When the "Superior Court acts as an intermediate appellate court reviewing agency acts pursuant to Rule 80C, we review the agency's decision directly." *Me. Health Care Ass'n Workers' Comp. Fund v. Superintendent of Ins.*, 2009 ME 5, ¶ 8, 962 A.2d 968. When reviewing an agency's factual findings, we will not substitute our own judgment for that of the Board. *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 22, 82 A.3d 148. "[T]hat the record before the Board is inconsistent or could support a different decision does not render the decision wrong." *Id.* (quotation marks omitted). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. As the party seeking to overturn the agency's decision, Stein bears the burden of proof to demonstrate that no competent evidence supports the Board's decision. *Id.*

### 1.  State of Mind Required to Prove Assault

[¶ 12] Pursuant to the Maine Criminal Code, a person is guilty of assault if "[t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person." 17–A M.R.S. § 207(1)(A). "A person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result." 17–A M.R.S. § 35(3)(A) (2013). Further, "the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the per-

son, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." 17–A M.R.S. § 35(3)(C) (2013). "By definition, conscious disregard is a *subjective* state of mind." *State v. Goodall*, 407 A.2d 268, 280 (Me.1979) (quotation marks omitted). "The [fact-finder] may infer the defendant's state of mind from his objective conduct." *State v. Taylor*, 661 A.2d 665, 668 (Me.1995).

[¶ 13] Stein argues that he was in a state of shock when he dragged the inmate to the medical unit, thus he was not *consciously* disregarding the risk of causing bodily injury or offensive physical contact to the inmate. Stein also contends that there is insufficient evidence to support the hearing officer's finding that his conduct amounted to a gross deviation from the standard of conduct a reasonable corrections officer would observe in the same situation. He argues that the hearing officer found simply that Stein violated jail policies and procedures, and that the hearing officer placed too much weight on that finding in reaching the conclusion that Stein's behavior constituted a gross deviation.

[¶ 14] Stein further contends that we should review this issue de novo because it involves the application of law to the facts. However, whether Stein's conduct was a gross deviation is a factual finding that is properly left to the fact-finder's determination. *See Budzko v. One City Ctr. Assocs.*, 2001 ME 37, ¶ 10, 767 A.2d 310 ("[W]hether a defendant's conduct was reasonable under the circumstances [is a] question[ ] of fact."); *State v. Ledger*, 599 A.2d 813, 815 (Me.1991) (concluding that evidence supported "the jury's conclusion that [the defendant's] conduct was a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situa-

tion"); *State v. Gammon,* 529 A.2d 813, 815 (Me.1987) ("We cannot say that the District Court erred in finding that [the defendant's conduct] involved reckless conduct, a conscious disregard of a known risk, and a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation."); *State v. Perfetto,* 424 A.2d 1095, 1098 (Me.1981) ("A rational jury could conclude that [the defendant's conduct] was a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation."). As such, it must be upheld if there is any competent evidence in the record to support it. *See Seider,* 2000 ME 206, ¶¶ 8–9, 762 A.2d 551.

[¶ 15] The hearing officer found that "[i]t was reckless for [Stein] to move the inmate without attempting to secure medical care." Although this statement, standing alone, does not identify which risks, if any, Stein may have consciously disregarded, the decision went on to explain in detail why the hearing officer concluded that Stein consciously disregarded the risk of causing bodily injury or offensive physical contact. Specifically, the decision noted that Stein was aware that the inmate's injuries likely involved broken bones, that Stein had been trained to immobilize an inmate who had sustained such serious injuries, that the inmate was screaming in pain, that the inmate's buttocks were partially exposed while he was being dragged, and that Stein repeatedly asked the inmate, "Was it worth it?" Similarly, in his response to the parties' exceptions to the Recommended Decision, the hearing officer unequivocally found "that Mr. Stein consciously disregarded the risk" and that "*[a] reasonable person,* including a corrections officer, aged 18 or older *in Mr. Stein's mental state,* would

have recognized the risk and would not disregard it." (Emphasis added.)

[¶ 16] In short, the record contains sufficient evidence to permit a factfinder to infer that Stein acted recklessly by consciously disregarding the risk that his actions would cause bodily injury or offensive physical contact to the inmate. Similarly, the evidence supports the finding that Stein's conduct constituted a gross deviation "from the standard of conduct of an ordinary and prudent corrections officer as well as that of a reasonably prudent person." Stein's objective conduct—including dragging the inmate for forty-six seconds—provides a sufficient basis for the hearing officer to infer that Stein acted with a reckless state of mind. *See Taylor,* 661 A.2d at 668.

### 2. Bodily Injury or Offensive Physical Contact

[¶ 17] "Bodily injury means physical pain, physical illness or any impairment of physical condition." 17–A M.R.S. § 2(5) (2013) (quotation marks omitted). There is no statutory definition of offensive physical contact, but we have previously explained that "the question is whether a reasonable person would find the contact to be offensive." *State v. Pozzuoli,* 1997 ME 91, ¶ 7, 693 A.2d 745. "Although the victim's reaction to the contact is relevant, it is not determinative of whether contact is offensive." *Id.* (quotation marks omitted).

[¶ 18] Stein contends that the only evidence relating to this element was the inmate's subjective response. He asserts that the hearing officer did not adequately consider that the conduct occurred during an emergency situation, lasted only forty-six seconds, and resulted in the inmate obtaining necessary medical care. However, the hearing officer's decision explained that

*[u]nder these circumstances, a reasonable person in the position of [the inmate]* would most likely have felt humiliated and degraded by being dragged across the floor by the shirt collar with his buttocks at times half or more exposed, while seriously injured and in pain and unable to stand, resist or protect himself.

(Emphasis added.) This finding reflects that the hearing officer appropriately considered whether Stein's actions caused physical contact that was objectively offensive. The finding that the contact was offensive was supported by evidence in the record, including the inmate's statement that he should have been treated like a human. *See Pozzuoli,* 1997 ME 91, ¶ 7, 693 A.2d 745.

[¶ 19] Stein further argues that there is insufficient evidence to support the finding that Stein caused bodily injury to the inmate. Because the hearing officer found that Stein's conduct resulted in offensive physical contact, there is no requirement that the State prove bodily injury as well. *See* 17–A M.R.S. § 207(1)(A). Nevertheless, Stein argues that, because there was inconsistent testimony about whether the abrasions on the inmate's hips were caused by Stein or by an incident that occurred prior to the inmate's incarceration, there is insufficient evidence to support a finding that Stein caused bodily injury.

[¶ 20] Stein's argument fails for two reasons. First, the hearing officer did not find that Stein caused the abrasions; on the contrary, he explicitly found that Stein caused bodily injury *"[r]egardless of* whether [the inmate's] abrasions were caused by his being dragged by an automobile prior to his jail injuries or whether they were caused in full or in part from being dragged across the jail floor." (Emphasis added.)

[¶ 21] Second, contrary to Stein's assertion, the hearing officer was not required to find that Stein caused the abrasions in order to find that Stein caused bodily injury. The hearing officer's findings make clear that he relied on the statutory definition of bodily injury, which includes "physical pain" as a category of bodily injury. 17–A M.R.S. § 2(5). The hearing officer found, by a preponderance of the evidence, "it is more likely true than not that Mr. Stein caused [the inmate] additional pain to his ankles by dragging him 127 feet across a concrete floor without in any way supporting [the inmate's] shattered ankles." Because this finding is supported by competent evidence in the record—including evidence that the inmate complained that his ankles hurt while he was being dragged—we must uphold it. *See Seider,* 2000 ME 206, ¶¶ 8–9, 762 A.2d 551.

### B. The Board's Ultimate Decision

[¶ 22] Stein argues that the Board's decision to suspend his certificate was arbitrary and capricious because the Board took no similar action against the pod supervisor. He asserts that he and the pod supervisor are similarly situated and that the disparity between the Board's initial decision to revoke Stein's certificate entirely and its failure to take any disciplinary action against the pod supervisor demonstrates an abuse of discretion.

[¶ 23] In an appeal from a Rule 80C judgment, we review the administrative agency's decision directly for an abuse of discretion. *Forest Ecology Network v. Land Use Regulation Comm'n,* 2012 ME 36, ¶ 28, 39 A.3d 74. Because the decisions concerning whether to revoke or suspend a correction officer's certificate are discretionary, Stein has the burden of demonstrating that the Board abused its discretion in reaching its final decision.

*See id.* "An abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Lippitt v. Bd. of Certification for Geologists and Soil Scientists,* 2014 ME 42, ¶ 16, 88 A.3d 154 (quotation marks omitted). "It is not sufficient to demonstrate that, on the facts of the case, the decisionmaker could have made choices more acceptable to the appellant or even to a reviewing court." *Sager v. Town of Bowdoinham,* 2004 ME 40, ¶ 11, 845 A.2d 567.

■ [¶ 24] Stein has not demonstrated that the one-year suspension exceeded the bounds of reasonable choices available to the Board. Whether the pod supervisor or other officers were disciplined for their different roles in the incident is not persuasive in our consideration of whether the Board exceeded the bounds of its discretion with respect to Stein. The Board was authorized by statute to revoke or suspend Stein's certificate upon making the appropriate findings. *See* 25 M.R.S. § 2806(1)(B)(2) (2012). The hearing officer's recommendation was issued after a two-day evidentiary hearing, and the Board accepted the hearing officer's more lenient recommendation. On this record, we discern no basis for concluding that the Board's decision to issue a one-year suspension constituted an abuse of discretion.

The entry is:

Judgment affirmed.