STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-2015-68

DANIEL E. MUTTY,
          Petitioner

**DECISION AND ORDER**

    v.

MAINE DEPARTMENT OF
CORRECTIONS,
          Respondent

The matter before the court is an appeal by Daniel Mutty, an inmate at the Maine State Prison, from a disciplinary proceeding (MSP-2015-1423) that resulted in the imposition of sanctions against him. This appeal has been brought in accordance with 5 M.R.S. §11001-11008 (Administrative Procedure Act) and M.R.Civ.P. 80C.

## FACTUAL AND PROCEDURAL BACKGROUND

In a disciplinary incident report dated September 14, 2015, Ofc. Staples charged the Petitioner with the following violations of the prison's disciplinary policy: (1) "Disturbance" (Class B);[1] (2) "Order, Refusing To Obey" (Class C);[2] (3) "Provocation" (Class C),[3] and; (4) "Tattooing" (Class A).[4] *See* Policy 20.1, Section VI, Procedure E. *See also* page 22 of Policy 20.1 (all violations "include the

---

[1] "Planning, attempting to create, or creating a disturbance involving no destruction of property or injury to another person or threat of such destruction or injury."

[2] "Refusing to obey any lawful order, instruction, rule, or assignment."

[3] "Provocation by words or gesture of any person."

[4] "Tattooing or any other intentional puncturing of one's own skin or the skin of another or the possession of tattooing equipment."

planning of, attempt of, and/or participation as an accessory in the violation."). The alleged violations related to an incident that occurred between Ofc. Staples and the Petitioner on the date the report was prepared while the officer addressed the Petitioner in the Close B dayroom. The report described the encounter as follows:

> On the above date and time inmate Mutty was asked if both tattoo's on his shinns [sic] were new or if they were on his books.[5] Inmate stated "You go fucking find out." I told inmate to stand up as he was sitting in the dayroom during a Facility search. I took custody of Inmate Mutty's left arm and he continued to push against me fighting against the escort. I changed my escort to a transportation escort and escorted prisoner Mutty along with additional SOG Operators to Close-C pod. Prisoner has been placed on EOS for his behavior and actions.

The incident report contained a notation of September 15, 2015 that Ofc. Parsons documented the existence of physical evidence consisting of: "Photos of I/M Mutty and undocumented tattoos." On September 17, 2015 the Petitioner made the following written statement is response to the write-up:

> No conduct in write up alleging tattooing, the statement I have been alleged to have made I did not. I said: "I don't know you tell me." No evidence in write up supporting Disturbance or Order, Refusing to Obey, or Provocation, officer never signed write-up.

On September 18, 2015 the Petitioner was notified that his disciplinary hearing would be held on September 23, 2015. The Petitioner indicated that he wished to call Ofc. Staples and "other CO who EOS," presumably a reference to the other correctional officer(s) who assisted in escorting the Petitioner to EOS (Emergency Status Observation). The hearing was actually held on October 6,

---

[5] It is the court's understanding that this phrase refers to tattoos that have been documented to have existed prior to the inmate arriving at the prison.

2015. Sometime prior to the hearing the Petitioner wrote to the Deputy Warden asking that a hearing officer other than Capt. Abbott be assigned to his hearing. The Petitioner was instructed to address his request to the hearing officer at the time of the hearing. From the administrative record provided to the court, it appears that the Petitioner did renew his request, which was denied.

The Petitioner submitted a 3-page handwritten statement at the hearing, in which he repeated his earlier claims that the charges against him were unsupported by any evidence. He also requested that Ofc. Staples be called as a witness, as well as the other SOG members as "it's the prisoner's belief their testimony will corroborate the facts presented here by the prisoner." The Petitioner also requested "that the recording which documented the entire alleged situation be reviewed, and that Officer Staples be called who wore a camera on his shoulder that captured the incident, which will evidence the statement the reporting officer alleges 'You go fucking find out' is a false statement by this officer."

In the Summary of Hearing the hearing officer documented the following as the Petitioner's statement: "I am requesting a different chairman because I have several lawsuits against you. I am not guilty. I did not push back on the staff and I did not make the statements that are in the record." Ofc. Staples apparently testified by telephone and his testimony was summarized as follows: "Ofc. Staples said that this prisoner did make statements that had profanity in it and did push back on his and the other staff while escorting this prisoner." The hearing officer made no reference to any other witness or any video recording. The Petitioner was found guilty of all offenses "based on the staff report and the photo of the tattoos." The hearing officer recommended a variety of dispositions for each violation, but the net effect of the proposed discipline was: 60 days of disciplinary restriction, 50 days loss of good time and a $100 monetary sanction.

The Petitioner filed a timely appeal, which was denied by the designee of the Chief Administrative Officer on October 19, 2015. The Petition for Judicial Review of Final Agency Action was filed in this court on November 4, 2015.

## DISCUSSION

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v Departmental of Environmental Protection*, 2005 ME. 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v Maine Public Employees Retirement System*, 2009 ME. 134, ¶ 3, 985 A.2d 501. In particular, a party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Stein v. Me. Crim. Justice Academy*, 2014 ME 82, ¶ 11, 95 A.3d 612.

This court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lake v Board of Environmental Protection*, 2001 ME. 18 ¶13, 989 A. 2d 1128. The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the witnesses and evidence, supported by substantial evidence in the record, should not be disturbed by this court. *Cotton v Maine Employment Security Commission*, 431 A. 2d 637, 640 (Me. 1981). The issue is not whether the court would have reached the same result the

4

agency did, but whether the "record contains competent and substantial evidence that supports the result reached" by the agency. *Seider v. Board of Examiners of Psychologists,* 2000 ME 206, ¶ 8, 762 A.2d 551 *quoting CWCO, Inc. v. Superintendent of Insurance,* 1997 ME 226, ¶ 6, 703 A. 2d 1258, 1261.

The court concludes that there was sufficient and substantial evidence in the record to support the hearing officer's findings of guilt. A finding of guilty "must be based upon a determination that it is more probable than not that the prisoner committed the violation." Policy 20.1 Section VI, Procedure C(12).

Based upon the report and testimony of Ofc. Staples, as well as the photographs of the tattoos on the Petitioner, the hearing officer could have reasonably and rationally determined that the Petitioner was guilty all four offenses with which he was charged.

The Petitioner's behavior in essentially challenging the officer by stating "You go fucking find out" or, if the Petitioner's version is believed, "I don't know, you tell me," and then physically resisting the officer's attempt to remove him from the dayroom ultimately requiring the assistance of additional escort staff, could reasonably be deemed to qualify as "creating a disturbance."

Similarly, the Petitioner's action of "pushing against me [Ofc. Staples] fighting against the escort" constituted a refusal to obey a lawful order or instruction.

Likewise, the language used by the Petitioner in response to the officer's inquiry about his tattoos could reasonably be perceived to be a "[p]rovocation by words," or an attempt at one.

Finally, based on the photographs of the tattoos on the Petitioner's shin(s), a fact finder could conclude that those tattoos were of recent origin or creation. Moreover, the notation by Ofc. Parsons referred to the photographic evidence as including "undocumented tattoos."

Based on all of this evidence, the court concludes that there was competent evidence in the record to support the hearing officer's findings.

The court rejects the Petitioner's argument that the hearing officer was disqualified from serving at the hearing because the Petitioner had other Rule 80C petitions pending in the Superior Court. Those types of judicial review petitions are not a basis to remove a hearing officer for bias.

Officer Staples was called as a witness and apparently testified by telephone. The other correctional officers who may have assisted Ofc. Staples in escorting the Petitioner to EOS were apparently not called, and there is no indication in the Summary of Hearing as to why they were not.

No video recording evidence was mentioned by the hearing officer and it is not apparent from the administrative record whether any such video evidence actually exists of the incident between the Petitioner and Ofc. Staples.

Regarding the witnesses who did not testify, 34-A M.R.S. §3032(6)(D) provides that "[t]he client is entitled to call one or more witnesses, which right may not be unreasonably withheld or restricted." Both this statutory provision and the Supreme Court decision in *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) recognize that the right to call witnesses must be subject to the discretionary authority of prison officials "to keep the hearing within reasonable limits." There can be no doubt that a hearing officer has broad discretion to control a disciplinary proceeding, but the touchstone of that discretion is reasonableness.

It is true, as the Respondent points out (Brief at 6), that neither state law nor *Wolff v. McDonnell*, requires the hearing officer to document the reason(s) why a witness was not called or allowed to be called by a prisoner in a disciplinary

action.[6] Department of Corrections policy, however, does provide that "[w]henever permission to call or question a witness is withheld or restricted, the disciplinary hearing officer shall document the reason(s) in the written summary." Policy 20.1, Section VI, Procedure C(8). A similar requirement applies to the presentation and examination of exhibits. Procedure C(10). The Respondent argues that the requirement of such documentation by the hearing officer "is not mandatory, but directory only," and does not, according to the Policy, entitle an inmate to dismissal of the discipline. Respondent's Brief at 6. *See* Procedure B(10) regarding dismissal of disciplinary reports.

It may be that the failure of the hearing officer to comply with the directive to document the reason(s) why witnesses were not called or exhibits were not presented, does not entitle the prisoner to dismissal of the discipline at the Department level. But failure to provide the documentation of reasons as required by MDOC policy has a significant impact on the ability of the court to engage in meaningful judicial review of the agency's final action. By consistently failing to provide such documentation in the administrative record, a reviewing court is left to guess and speculate as to what happened at the agency level. The court cannot easily evaluate whether the right to call and question witnesses, or the right to present evidence, has been "unreasonably withheld or restricted" when the hearing officer has never given a reason and the record is otherwise silent. Thus, the court emphasizes again the importance of providing such documentation of reasons in order to facilitate effective, efficient and meaningful judicial review.

---

[6] "Although we do not prescribe it, it would be useful for the Committee [hearing tribunal] to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." 418 U.S. at 566.

Based upon the administrative record, however, the court is able to conclude that the additional corrections officers would not have offered any relevant evidence. Ofc. Staples called in those officers to assist him in the escort of the Petitioner, after Staples had taken the Petitioner's "left arm and he continued to push against me fighting against the escort."

Similarly, assuming a video of the incident exists and assuming it shows that the Petitioner actually said - "I don't know. You tell me." - in response to Ofc. Staples' question regarding the tattoos on Petitioner's shins, that language itself, in context, could reasonably be viewed as a provocation by words.

Finally, the remaining claims raised by the Petitioner are without merit and are not discussed further.

## CONCLUSION

The entry is:

The Petition for Review of Final Agency Action is DENIED; the disciplinary action in this matter (MSP-2015-1423) is AFFIRMED.

DATED: November 3, 2016

William R. Stokes
Justice, Maine Superior Court