STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AUGSC-AP-2018-78

CALVIN WIGGINS,
      Petitioner

v.

**DECISION AND ORDER**

MAINE DEPARTMENT OF
CORRECTIONS,
      Respondent.

## INTRODUCTION

The matter before the court is an appeal by Calvin Wiggins, an inmate at the Maine State Prison ("MSP"), from a disciplinary proceeding that resulted in the imposition of sanctions against him for the following offenses: Trafficking; Possession, Other; and Community Release Violation under the Prisoner Discipline Policy. This appeal has been brought in accordance with 5 M.R.S. §§ 11001-11008 (Administrative Procedure Act) and Maine Rule of Civil Procedure 80C.

## FACTUAL BACKGROUND

On August 29, 2018, Kevin Dionne[1] and Corporal Silveira searched Room 4 in Dorm II at the Mountain View Correctional Facility ("MVCF") while Calvin Wiggins ("Petitioner") was at work. (Certified Record ("C.R.") 3, 20.) The Petitioner was one of three prisoners assigned to the room. (C.R. 3; Pet'r's Compl.) During the search, the officers found a white box under a heat register on Petitioner's side of the room with "EZ" written on the top. (C.R. 3, 10.) It was alleged in the Disciplinary Report ("Report") that

---

[1] No title is provided for Dionne.

1

Wiggins is also known by the name "EZ." (C.R. 3.) A pair of rolled up socks was inside the box. (C.R. 3.) The socks were labeled with "Downeast Correctional, Wiggins, C. 29944.[2]" (C.R. 3, 9.) Inside the socks was a rubber glove containing what felt like loose tobacco. (C.R. 3.) A field test showed that the substance was synthetic marijuana. (C.R. 3.) The officers searched the Petitioner's locker and found pepperoni and an onion, which they believed were stolen from the kitchen, and other miscellaneous items they described as contraband. (C.R. 3, 7, 11-12.) The Report lists the following violations: (1) Community Release Violation; (2) Possession, Contraband; (3); Theft ($25 or less); (4) Trafficking; and (5) Possession, Other. The Report is not signed or dated.[3] (C.R. 4.)

On August 30, 2018, the Report was reviewed, approved, and forwarded to security staff for investigation. (C.R. 5.) An investigation occurred on the same day. (C.R. 5.) Sergeant Kent Commeau took the Petitioner's statement, which he recorded as "no comment." (C.R. 5.) The Petitioner alleges that no investigation took place, he never said "no comment" to an investigator, and that his signature on the investigation form is forged. The Petitioner was notified on September 14, 2018, of a disciplinary hearing to be held on September 18. (C.R. 1.) The Petitioner listed two MVCF prisoners as witnesses. (C.R. 1.) The court interprets the witnesses named in the Letter of Notification of Disciplinary Hearing to refer to the Petitioner's cellmate and another inmate in the "SCC" program.[4] (C.R. 1.)

---

[2] This is the Petitioner's MDOC number.

[3] This Report has a typed in time, date, and name of an officer, but he did not sign and date the report on the second page. (C.R. 3-4.)

[4] The court understands that SCC stands for "Supervised Community Confinement." This is believed to be the program that provided the Petitioner work release at MVCF and allowed him to live in a dorm there.

The hearing occurred on September 18, 2018, and the Petitioner pled not guilty to all the violations. (C.R. 14.) No witnesses testified and the Hearing Officer ("HO") wrote that, per the Petitioner, the witnesses listed were not needed. (C.R. 14.) The Petitioner submitted a written statement to the HO at the hearing. (C.R. 22.) The HO found the Petitioner guilty of the following violations: Community Release Violation; Trafficking; and Possession, Other. (C.R. 14.) The HO based his finding of guilt on the officer's Report, but noted that the write-up had been overcharged. (C.R. 15.) The Petitioner signed the Notification of Right to Appeal, which is the final page of the Disciplinary Hearing Summary, at the end of the hearing. (C.R. 17.) The Petitioner appealed on October 1, 2018, stating that he was denied his witnesses, the Report was not forwarded from MVCF to MSP but staff "pushed" the action forward, there were typos within the Report and it was not signed, no physical evidence supported a finding of guilt, and no investigation occurred, among other issues. (C.R. 18-21.) The Chief Administrative Officer affirmed the HO's decision and disposition on October 9, 2018, and notification of the same was provided to the Petitioner on October 17, 2018. (C.R. 23.)

## DISCUSSION

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dept. of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has the burden of persuasion on appeal.

3

*Anderson v. Maine Public Employees Retirement System*, 2009 ME 134, ¶ 3, 985 A.2d 501. In particular, a party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Stein v. Me. Crim. Justice Academy*, 2014 ME 82, ¶ 11, 95 A.3d 612.

On November, 11, 2018 the Petitioner filed his Petition for Judicial Review of Final Agency Action. In his subsequent briefing he argues that MDOC wrongfully denied him witnesses, did not follow its own policies, and that substantial evidence did not support the HO's decision. For its part, MDOC contends that the Petitioner waived his request for witnesses, and even if he did not, he has not shown prejudice by being denied witnesses. MDOC also maintains that any irregularities in the Report did not require its dismissal and sufficient evidence supported the HO's finding of guilt.

## I.     The Witness Issue

The Petitioner alleges that he requested to call officers Dionne and Ritano, and Sergeant Commeau as witnesses. Had they appeared at the hearing, he would have asked them for a copy of the test results, the chain of custody forms, and who entered the Investigation Report because his signature on it is forged. The Petitioner claims that the HO said he would not call the witnesses because it would be impossible for him to get them to MSP from MVCF. MDOC argues that the Petitioner waived his right to have the witnesses testify when he told the HO that they were not needed and neither his written statement submitted at the hearing, nor his briefing, describes information that the witnesses would have provided to the HO that would bear on his guilt or innocence.

Title 34-A provides that a prisoner has the right to an impartial hearing when punishment may affect his sentence, labor, or other rights. § 3032(6). At this hearing, the prisoner "is entitled to call one or more witnesses, which right may not be unreasonably withheld or restricted." § 3032(6)(D). Witnesses that are physically outside the facility are

4

not allowed to be physically present at the hearing, but may submit their testimony in writing, if permitted by the HO, or by telephone. MDOC Policy 20.1 Proc. C(7). If the HO refuses to call a witness requested by the prisoner, he must state his reason. MDOC Policy 20.1 Proc. C(8).

Despite the Petitioner's claim that he was denied witnesses, the Record does not support that claim. The Petitioner signed the Notification of Right to Appeal which is the final page of the hearing summary. (C.R. 17). That summary states that "[t]he witnesses listed are not needed per the prisoner." (C.R. 14.) The Petitioner explains that he did not argue with the HO about the witnesses because he was afraid that the HO would throw him out of the hearing and continue without him, as he alleges this happened to him before. This court is not convinced. The Petitioner signed the paperwork at the end of the hearing, not during it, so he could not have been thrown out of the hearing as it was over. If the Petitioner did not tell the HO that the witnesses were not needed and the summary was therefore inaccurate, he should not have signed the Notification of Right to Appeal at the end of the hearing summary. The court also notes that the Petitioner did not list officers Dionne and Ritano or Sergeant Commeau as witnesses on the Letter of Notification of Disciplinary Hearing signed by him on September 14, 2018. (C.R. 1.)

Because the HO indicated in the hearing summary that the Petitioner stated that the witnesses were not needed, and the Petitioner signed this very summary on the final page, the court denies the Petitioner judicial review of this issue.

## II. Irregularities in the Investigation

MDOC's Prisoner Discipline Policy, Procedure B, sets guidelines and standards for Formal Resolutions. If a prisoner declines an informal resolution, the staff shall complete a Disciplinary Report and provide it to a Shift Supervisor, Unit Manager, or other security supervisor designated by the Chief Administrative Officer within 72 hours.

5

MDOC Policy 20.1 Proc. B(3). "Once a disciplinary report has been reviewed and signed by the receiving Shift Supervisor, Unit Manager, or other security supervisor designated by the Chief Administrative Officer that security supervisor shall forward the report to a security staff person for investigation." MDOC Policy 20.1 Proc. B(8), *see* C.R. 5.

The Petitioner argues that because the Report is unsigned it should not have been relied upon. Additionally, he states that the Report lists "MSP/CLOSE/APOD/A107/B" as the Housing Unit where the incident occurred.[5] He maintains that no investigation took place, he never said "no comment" to an investigator, and his signature on the investigation form is forged. MDOC responds that the Record does not support the Petitioner's claim, but even if it did, that would not affect the HO's decision or be a reason to dismiss the Report.

The court is not persuaded by the Petitioner's argument that the Report initially listed MSP. There is no dispute that the incident occurred at MVCF. The Report, however, is unsigned. (C.R. 3-4.) Although no policy could be found that requires a Report to be signed by the officer who wrote it before being approved, best practices would suggest that it be signed before MDOC moves forward with an investigation and hearing. Despite this, MDOC contends that a Report being unsigned is not a ground for dismissing it.[6] The court must give MDOC's interpretation of its policies and procedures considerable deference, and will not set them aside unless the policies and procedures clearly compel

---

[5] This is not what is shown on the Report in the Record. The Report shows that the incident occurred in Unit B of the MVCF. (C.R. 2.) The court is unclear where Petitioner is pulling the quoted information from.

[6] MDOC Policy 20.1 Proc. B(11) explains that a Disciplinary Report may be dismissed "only if the facts as described in the disciplinary report do not constitute a violation, the timeframe for completing and submitting the disciplinary report was not adhered to, or there appears to have been a violation of the prisoner's statutory or constitutional rights."

6

a contrary result, or its interpretation of the policies and procedures are contrary to Title 34-A. *See Danzig v. Bd. of Soc. Worker Licensure*, 2012 ME 87, ¶ 7, 46 A.3d 1122. The Report being unsigned does not violate any of the impartial hearing requirements set forth in 34-A M.R.S. § 3032(6)(A)-(I) as the Petitioner was informed in writing of the violation, was present at the hearing, allowed to present evidence, was allowed counsel substitute, a record of the proceedings was maintained, and the Petitioner was allowed to appeal. Because MDOC's interpretation of its policies and procedures does not compel a contrary result and 34-A M.R.S. § 3032(6) was complied with, the court denies the Petitioner judicial review on his claim that MDOC did not follow its policies.[7]

### III. Substantial Evidence

Substantial evidence in the Record supports the HO's finding of guilt on the infractions of Trafficking; Possession, Other; and Community Release Violation. The HO found the Petitioner "guilty based on the officer's report[,]" as he "believe[d] that base[d] on the report from the officer it is more probable than not that prisoner did do what's in the report. . . ." (C.R. 15.)

### A. Trafficking

Under the MDOC policy, Trafficking is a Class A violation and is defined as

Trafficking of a drug, regardless of whether or not prescribed to the prisoner, or possession or use of a prescription drug not prescribed to the prisoner by the facility healthcare staff, or possession or use of a non-prescribed scheduled drug of the W, X, Y classification, or related paraphernalia as defined by 17-A M.R.S.A. Trafficking, possession or use of a non-prescribed Schedule Z substance or related paraphernalia (marijuana or its derivatives and paraphernalia related to its use).

---

[7] The Petitioner's claim that the Investigation Report is a forgery lacks substance. The signature on the Investigation Report, C.R. 5, appears to be a match to the Petitioner's signatures on court pleadings. Moreover, if it was a forgery, it is likely that the investigating officer would have written something more incriminating than "no comment."

MDOC Policy 20.1, Proc. E. Synthetic marijuana is a Schedule Z drug. 17-A M.R.S. § 1102(4)(G).[8]

The Report reflects that the officers found synthetic marijuana in rolled up socks bearing the Petitioner's name and MDOC number, in a box labeled with the Petitioner's alias, near his side of the room. This is substantial evidence to support that the Petitioner committed the violation of trafficking by possessing a non-prescribed scheduled drug. The court denies the Petitioner judicial review because there was substantial evidence to support the HO's decision that he committed the violation of trafficking.

### B. Possession, Other

Possession, Other is a Class C violation and is defined, in relevant part, as "[p]ossession of any item which was not issued to the prisoner, sold through the commissary, or otherwise authorized to be in the prisoner's possession . . . ." MDOC Policy 20.1, Proc. E. Here, it is unlikely that a pepperoni and an onion were issued to the Petitioner. It is unknown to the court whether the commissary sells these items, or the

---

[8] This subsection addresses "synthetic cannabinoids" and then lists out dozens of chemical compounds. *See* § 1102(G)(1)-(9). According to a government website, synthetic cannabinoids are

> human-made mind-altering chemicals that are either sprayed on dried, shredded plant material so they can be smoked or sold as liquids to be vaporized and inhaled in e-cigarettes and other devices. These products are also known as herbal or liquid incense.

> These chemicals are called *cannabinoids* because they are similar to chemicals found in the marijuana plant. Because of this similarity, synthetic cannabinoids are sometimes misleadingly called 'synthetic marijuana' (or 'fake weed'), and they are often marketed as safe, legal alternatives to that drug. In fact, they are not safe and may affect the brain much more powerfully than marijuana; their actual effects can be unpredictable and, in some cases, more dangerous or even life-threatening.

*Synthetic Cannabinoids (K2/Spice)*, National Institute on Drug Abuse, (Feb. 5, 2018) https://www.drugabuse.gov/publications/drugfacts/synthetic-cannabinoids-k2spice (last visited May 7, 2019).

disposable razors (C.R. 12), that were in the Petitioner's locker. It can be assumed, however, that these were not items authorized to be in the Petitioner's possession, otherwise the officers would not have listed this as a violation. Regardless, the Petitioner does not argue in his pleadings or briefs that the items were rightfully in his possession. Since there are photographs of the items that were in the Petitioner's possession and he does not argue that he was authorized to have the items, the court denies the Petitioner judicial review because there was substantial evidence to support the HO's decision that he committed the violation of Possession, Other.

### C. Community Release Violation

A Community Release Violation, Class C, is described as "[a]ny violation of a community release program agreement, e.g., public service release, [or] work release . . . ." MDOC Policy 20.1, Proc. E. The Community Transition Program Agreement & Conditions subjects the prisoner to certain conditions if he is granted a community transition release. One of the conditions to which the prisoner must agree is to "obey all [MDOC] rules and policies and understand that failure to comply with any rule or policy may result in disciplinary action or other appropriate action."[9] The prisoner further agrees that he "will not purchase, possess, use, or administer any illegal drugs, marijuana, alcohol or chemical intoxicants in any form."[10]

The court has already determined that there was substantial evidence to support the HO's determination that the Petitioner committed the violations of Trafficking and Possession, Other. Because the Petitioner possessed synthetic marijuana and items he was

---

[9] ¶ 3 of the Agreement attached to MDOC's Br.
[10] *Id.* ¶ 10.

9

not authorized to have, the court denies the Petitioner judicial review as there was substantial evidence to support the HO's decision that he committed the Community Release Violation.

## CONCLUSION

The entry is:

The Petition for Judicial Review is DENIED.

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: May 16, 2019

William R. Stokes
Justice, Maine Superior Court