STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO-AP-19-38

CYNTHIA TEER, D.V. M.,
    Petitioner

**DECISION AND ORDER**
**(M.R.Civ.P.80C)**

V.

STATE BOARD OF
VETERINARY MEDICINE,
    Respondent

## INTRODUCTION

Before the court is the Petition for Judicial Review filed by Dr. Cynthia Teer, D.V.M. from a written ruling of the State Board of Veterinary Medicine (Board) granting Dr. Teer a suspended license to practice veterinary medicine in the State of Maine, and also imposing sanctions upon her for four alleged violations of the statutes and rules governing veterinarians. Dr. Teer seeks judicial review of the Board's Decision and Order dated June 20, 2019 in accordance with 5 M.R.S. § 11001 Maine Administrative Procedure Act and M.R.Civ.P. 80C.

The court has examined the entire administrative record and has read the memoranda of the parties, who have waived oral argument. The material facts may be summarized as follows.

## PROCEDURAL AND FACTUAL BACKGROUND

Dr. Teer was first licensed to practice as a veterinarian in Maine in 2002. In January, 2014, the Board issued a disciplinary decision against Dr.

Teer that required her to do certain things, including the submission to the Board of patient records on a quarterly basis. In September, 2017, Dr. Teer filed an application with the Board for the renewal of her license. In December, 2017, the Board preliminarily denied the license because Dr. Teer had failed to produce records as required by the previously issued disciplinary order. The Board informed Dr. Teer that her failure to request a hearing within 30 days would result in the preliminary denial of her license application becoming final. Dr. Teer did not request a hearing.

Dr. Teer received both written and verbal notice that the denial of her license application had become final as of January 24, 2018. Nevertheless, the Board found, and Dr. Teer did not dispute, that she continued to practice veterinary medicine without a license from January 24, 2018 up to the date of the hearing in this matter on May 22, 2019. In the meantime, on May 9, 2018, Dr. Teer filed another application for licensure as a veterinarian, which was also preliminarily denied in June 2018. Dr. Teer received notice that she did not hold a valid license to practice veterinary medicine in Maine.

In August, 2018, the Superior Court preliminarily enjoined Dr. Teer from engaging in any act constituting the practice of veterinary medicine. Dr. Teer continued to practice as a veterinarian. In October, 2018, however, Dr. Teer, the Board and the Office of the Attorney General entered into a Consent Agreement, in which Dr. Teer admitted to practicing without a license and engaging in actions that amounted to gross negligence, incompetence, misconduct and/or violations of the code of ethics or the standard of practice for veterinarians. She was reprimanded, required to pay a $10,000 civil penalty and placed on probation for 5 years. Among other conditions, Dr. Teer was required to engage the services of a "veterinary practice monitor

2

who shall monitor her veterinary practice." The practice monitor had to be approved by the Board prior to Dr. Teer being granted a license.

Dr. Teer did not obtain the Board's approval for a practice monitor, although she did seek to engage the services of someone to act as a monitor. Accordingly, the Board did not issue Dr. Teer a license to practice as a veterinarian. Dr. Teer continued to practice nonetheless. The Board's investigator visited Dr. Teer's office in Machias during January 2019 and found evidence that Dr. Teer was practicing veterinary medicine.

On January 22, 2019, the investigator filed a disciplinary complaint against Dr. Teer on the basis that she continued to practice without a license. In February, 2019, the Board continued to receive additional complaints that Dr. Teer was practicing as a veterinarian. Also, in February the Board sent written notice to Dr. Teer of the complaints against her and directed her to respond and to produce patient records. Dr. Teer responded but provided no records.

In March 2019, Dr. Teer sent a letter to the Board apologizing for "misunderstanding" her obligations under the Consent Agreement. Dr. Teer continued to practice, including performing surgery. Additional complaints were filed against Dr. Teer in March and April, 2019. Although notified of these complaints, and directed by the Board to respond to them and produce patient records, Dr. Teer did not make any response to the Board.

In mid-April, 2019, a news station aired a story about Dr. Teer and her failure to obtain a Maine license to practice as a veterinarian, all the while she was actually practicing in that capacity. Dr. Teer complained that "[t]he Board is at fault."

An adjudicatory hearing was held by the Board on May 22, 2019 on the disciplinary complaint against Dr. Teer. Numerous witnesses, including Dr.

3

Teer, testified. At the conclusion of the evidence, the Board deliberated in public and found that Dr. Teer had violated the statutes and rules governing the practice of veterinary medicine in four particular respects, namely: (1) that she practiced veterinary medicine after being informed by the Board and the Superior Court that she did not hold a license; (2) that she "intentionally misrepresented" the status of her veterinary license; (3) that she acted in a capacity requiring a license after her license had expired, and; (4) that she failed to produce patient records as required by the Board.

Also before the Board was Dr. Teer's application for a license filed in March 2019. As a result of the May 22, 2019 hearing, the Board voted to grant Dr. Teer's license application and to impose sanctions for her violations. The Board's findings and the sanctions and conditions it imposed are fully described in its written Decision and Order dated June 20, 2019. Specifically, Dr. Teer's license was suspended for a total of 360 days (90 days for each of the violations). The Board, however, agreed to stay one-half (180 days) of the suspension, provided Dr. Teer met the following conditions:

(a) Completion of a mental health evaluation by a mental health professional approved by the Board or its designee:

(b) The engagement of a practice monitor approved by the Board;

(c) Completion of 24 hours of continuing education, and;

(d) Appearance before the Board at its September 2019 meeting to provide a progress report on her compliance with the conditions described above.

Once Dr. Teer's license suspension has ended, she will be on probationary status for 5 years with conditions that include the production of patient records to the Board on a quarterly basis, pre-approval of the practice monitor,

4

minimum continuing education requirements and appearances before the Board at least twice a year to provide progress reports.

Dr. Teer now seeks judicial review of the Board's Decision and Order and the Board proceedings leading up to it.

## STANDARD OF REVIEW

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v Departmental of Environmental Protection*, 2005 ME. 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v Maine Public Employees Retirement System*, 2009 ME. 134, ¶ 3, 985 A.2d 501. In particular, a party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Stein v. Me. Crim. Justice Academy*, 2014 ME 82, ¶ 11, 95 A.3d 612.

This court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lake v Board of Environmental Protection*, 2001 ME. 18 ¶13, 989 A. 2d 1128. The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the witnesses and evidence, supported by substantial evidence in the record,

should not be disturbed by this court. *Cotton v Maine Employment Security Commission*, 431 A. 2d 637, 640 (Me. 1981). The issue is not whether the court would have reached the same result the agency did, but whether the "record contains competent and substantial evidence that supports the result reached" by the agency. *Seider v. Board of Examiners of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551 *quoting CWCO, Inc. v. Superintendent of Insurance,* 1997 ME 226, ¶ 6, 703 A. 2d 1258, 1261.

## DISCUSSION

### A. The Questioning Conducted by the Hearing Officer

During the testimonial hearing before the Board, the Hearing Officer (a lawyer) asked questions of two witnesses. She asked questions of Dr. Teer without objection, and Cathy Neumann without objection until well into her questioning, at which point counsel for Dr. Teer objected. The Hearing Officer asked one final question after that. (A.R. at 254-55; 262-63).

Dr. Teer now claims that questioning witnesses by the Hearing Officer was "plainly and flatly prohibited." *Pet.'s Memorandum at 6.* The court is not convinced that questioning by a hearing officer in general is so plainly forbidden, as claimed by Dr. Teer. Rather, asking clarifying and non-prejudicial questions would seem to be consistent with a hearing officer's role of regulating the course of the proceedings and, ultimately, preparing a draft written decision on behalf of the Board. 5 M.R.S. § 9062(3). The court has reviewed the questions asked by the Hearing Officer in this case and is satisfied that they were clarifying questions within the scope of the witness' prior testimony. Moreover, Dr. Teer can point to no prejudice of any kind resulting from the Hearing Officer's questioning of the witnesses.

6

## B. "Reopening" the Record

After the evidence was closed in Dr. Teer's adjudicatory hearing, the Board deliberated and voted to find the four violations alleged against Dr. Teer. As the Board was deliberating on the question of sanctions and the status of Dr. Teer's license, the Hearing Officer permitted the Board to hear testimony from a witness who had familiarity with the Board's licensing website and application process. Neither party objected.

Dr. Teer contends that this action by the Hearing Officer was a "gross violation of her authority." *Pet.'s memorandum at 8.* The court disagrees. Allowing the Board to consult with a staff member who could provide the Board with accurate information as to the licensing consequences of its potential decision, was not arbitrary and capricious. Rather, it is, in the court's view, a reasonable exercise of the Hearing Officer's authority and responsibility to regulate the course of the proceeding. Moreover, the parties were offered the opportunity to ask their own questions of the witness, but they declined to do so.

## C. Bias and Lack of Impartiality

While the Board was deliberating as to the sanctions to be imposed on Dr. Teer as a result of her violations and as conditions for the granting of her license application, one Board member mistakenly referred to the Assistant Attorney General prosecuting the case as "our counsel" with reference to the recommendation she was making. The Hearing Officer promptly and clearly reminded the Board that she was counsel for the Board, not the prosecuting attorney.

Dr. Teer alleges that the Board member's confusion "clouds the entire proceeding. . ." *Pet.'s Memorandum at 8.* The court has reviewed the entire record in this matter, particularly the evidentiary hearing of May 22, 2019.

7

The court is satisfied that the "confusion" by a Board member was just that – "confusion" – and not evidence of bias or partiality. Furthermore, Dr. Teer did not make any motion to have either the Board member or the Hearing Officer address the issue of whether they were biased pursuant to 5 M.R.S. § 9063(1).

### D. "Intentional" Misrepresentation

Dr. Teer maintains that the Board lacked substantial evidence in the record to find that she "intentionally" misrepresented the status of her veterinarian's license. In the court's view, there was ample evidence before the Board to support the conclusion that Dr. Teer deliberately misrepresented the status of her license by performing veterinary medical services, including surgery, for patients, without informing their owners that she was not licensed to perform those services. The Board was not required to accept Dr. Teer's explanation that she did not understand the status of her license.

### E. Basis for Sanctions

Dr. Teer argues that the Board's Decision and Order should be vacated because it did not adequately explain the reasoning behind the imposition of particular sanctions placed upon her. Title 5 M.R.S. § 9061 required the Board to issue a written decision that included "findings of fact sufficient to apprise the parties and any interested members of the public of the basis of the decision." Citing *Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, 843 A.2d 18, Dr. Teer claims that she and the public must "speculate over the reason why the Board chose to levy these particular sanctions." *Pet.'s Reply Memorandum at 4*.

While an agency needs to set forth the basis for its decision with reasonable clarity, it does not need to state the obvious. Here, the Board has had an on-going disciplinary involvement with Dr. Teer since at least 2014.

8

There has been a lengthy history of Dr. Teer ignoring orders from the Board and, more recently, the Superior Court. Notwithstanding her awareness of those outstanding orders, Dr. Teer disregarded them and continued to engage in the unlicensed practice of veterinary medicine in this State.

The Board's detailed written Decision and Order provided the factual foundation for its rulings, including the particular sanctions it imposed. Those factual findings themselves explain why the Board required a mental health evaluation to ensure Dr. Teer's fitness to practice as a veterinarian. Similarly, the reporting and continuing education requirements, as well as the practice monitor obligations, all logically and rationally follow from the factual findings the Board made.

The court finds no error in the manner in which the Board imposed sanctions upon Dr. Teer.

## CONCLUSION

The entry is:

Petitioner's (Dr. Teer's) Petition for Judicial Review is DENIED and the Decision and Order of the State Board of Veterinary Medicine is AFFIRMED.

The clerk is directed to incorporate this Order into the docket of this case by notation reference in accordance with M.R.Civ.P. 79(a).

Dated: January 21, 2020

William R. Stokes
Justice, Superior Court

9