MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2014 ME 116
Docket:       BEP-13-413
Argued:       September 4, 2014
Decided:      October 21, 2014

Panel:        SAUFLEY, C.J., and SILVER, MEAD, GORMAN, and <u>JABAR</u>, JJ.

PASSADUMKEAG MOUNTAIN FRIENDS et al.

v.

BOARD OF ENVIRONMENTAL PROTECTION et al.

JABAR, J.

[¶1]     Passadumkeag Mountain Friends (PMF), a Maine nonprofit corporation, Alexander F. Cuprak, and Rhonda Cuprak appeal from a decision by the Board of Environmental Protection (the Board) granting Passadumkeag Windpark, LLC, (PW) a permit to develop a wind farm on property owned by Penobscot Forest, LLC, (PF) located on Passadumkeag Ridge in Grand Falls Township.  The Board's decision followed PW and PF's appeal from the decision of the Department of Environmental Protection (the Department) denying the requested permit.  PMF and the Cupraks contend that we should treat the decision of the Department, rather than the decision of the Board, as operative for purposes of appellate review.  The Cupraks also contend that, even if the Board's decision is reviewed on appeal, the record does not support that decision, and that they were denied due process because of ex parte communications between the Board, PW,

and PF during the application process. We disagree with these contentions and affirm the Board's decision.

## I. ADMINISTRATIVE PROCESS

[¶2] In February 2012, PW applied to the Department for an expedited wind energy development permit pursuant to the Natural Resources Protection Act, 38 M.R.S. §§ 480-A to 480-HH (2012). *See* 35-A M.R.S. § 3451(4) (2013); 38 M.R.S. § 480-C. It also applied for the Department's approval of the project pursuant to the site location of development statute. *See* 38 M.R.S. §§ 482(2)(A), 483-A (2013). Through these applications, PW sought approval to construct a wind farm on Passadumkeag Ridge in Grand Falls Township. The project features fourteen 140-meter-high turbines, access roads, a crane path, a meteorological tower, and electrical collection infrastructure including an electrical substation, an operations and maintenance building in Greenbush, and a 17-mile transmission line.

[¶3] While considering PW's application, the Department's staff made two site visits and held two public meetings. The Department did not hold a public hearing, concluding that there was insufficient "credible conflicting technical information" that would warrant a public hearing. *See* 38 M.R.S. § 345-A(1-A) (2013); 2 C.M.R. 06 096 002-3 § 7(B) (2013). During the meetings, the Department heard concerns from numerous members of the public, whom it

labeled "interested persons," including the Cupraks, and several individual members of PMF. *See* 2 C.M.R. 06 096 002-1 § 1(J) (2013).

[¶4]    The Department ultimately denied the application, finding that construction on Passadumkeag Ridge would dramatically change the undeveloped view of Passadumkeag Mountain from Saponac Pond, and concluding that the project would have an unreasonable adverse impact on the scenic character and existing uses related to the scenic character of Saponac Pond, a scenic resource of state or national significance (SRSNS).  The Department also concluded that, with the exception of an unreasonable adverse impact on the scenic character and existing uses of Saponac Pond, the applicant had met all permit criteria.  After denial of the application, PW, the applicant, and PF, the owner of the land on which the wind park would be built, both filed timely notices of appeal to the Board.  *See* 38 M.R.S. § 344(2-A) (2013).  The Cupraks then filed a letter with the Board stating their objections to the application and the appeal.

[¶5]    While it was reviewing the Department's decision, the Board sent several letters to PW regarding the issues and evidence that it would consider, without sending copies to the Cupraks or other interested parties.  At its March 21, 2013, meeting, the Board heard arguments from PW, PF, the Department's staff, and the Cupraks, but it did not take any additional evidence or augment the administrative record.

[¶6]  On August 20, 2013, the Board issued "Findings of Fact and Order on Appeal."  In it, the Board stated that the scenic consultants hired by PW and the Department "agree that the project will not have an unreasonable adverse impact on the scenic character of Saponac Pond," and that it found these assessments credible.  Based on this determination, the Board granted the permit.  Both PMF and the Cupraks timely appealed.  *See* 38 M.R.S. § 346(4) (2013); M.R. App. P. 2(b)(3).

## II.  DISCUSSION

[¶7]  Appellants raise three fundamental issues on appeal: (1) whether the decision of the Department, rather than the Board, is the operative decision on appeal; (2) whether there is sufficient evidence to support the Board's decision; and (3) whether the Cupraks were denied due process as a result of ex parte communications between the Board, PW, and PF during the application process.[1]

A.    Operative Decision

[¶8]  PMF and the Cupraks argue that the Board erred in reviewing the Department's decision de novo, and that the Department, as fact-finder, issues the operative decision for appellate review.  Appellants base their arguments on the language of 38 M.R.S. § 341-D (2013), which details the Board's responsibilities

---

[1]  Although PF challenges PMF's standing to seek review of the Board's decision, we decline to address this issue because PMF has not raised any issues that were not raised by the Cupraks, for whom standing is uncontested.

and duties in reviewing permit applications. Pursuant to section 341-D(4)(D), which applies specifically to "[l]icense or permit decisions regarding an expedited wind energy development," the Board may supplement the record with additional information at its discretion. Section 341-D(4)(D) does not expressly provide that the Board is not bound by the Department's findings, unlike section 341-D(4)(A), which pertains to other permit and license appeals. PMF and the Cupraks argue that this omission is an indication of the Legislature's intent to have the Board give deference to the Department's findings.

[¶9] However, in *Concerned Citizens to Save Roxbury v. Board of Environmental Protection*, we determined that the Board had engaged in an independent review of the record, which included not only the administrative record before the Department, but also some supplemental evidence presented by the parties. 2011 ME 39 ¶ 17, 15 A.3d 1263. Based on that determination, we concluded that the Board's decision was the operative decision for our appellate review. *Id.* In our discussion, we noted that the Department's rules for processing appeals provided that the Board, "is not bound by the [Department's] findings of fact or conclusions of law." *Id.* ¶ 16 (quoting 2 C.M.R. 06 096 002-12 § 24(B)(7) (2003)).

[¶10] Although the Board in this case did not supplement the administrative record in the course of its review, it engaged in an independent analysis of the

6

record, made factual findings regarding the credibility of various experts, and concluded that the proposed development would not have an unreasonable adverse impact on Saponac Pond. *See* 2 C.M.R. 06 096 002-12 § 24(G) (2013) (providing that the "Board is not bound by the [Department's] findings of fact or conclusions of law"). The Board acted as both fact-finder and decision-maker pursuant to agency rules, and did not err in so doing. The Board's decision is the operative decision for purposes of this appeal.

B.     The Board's Findings and Conclusions

[¶11]   The Cupraks argue that the Board's findings regarding the visual impact of the proposed project were based upon "statistically flawed" evidence. They also contend that the Board erred as a matter of law in weighing the relevant criteria for determining whether the proposed project would have an unreasonable adverse impact on the scenic character and related uses of Saponac Pond.

[¶12]   Our review of administrative agency decisions is "deferential and limited." *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128. When reviewing an agency's interpretation of a statute that it administers, we defer to the agency's construction unless the statute plainly compels a contrary result. *FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶ 11, 926 A.2d 1197. When reviewing an agency's factual findings, we examine the record in its entirety. *Concerned Citizens to Save Roxbury*, 2011

ME 39, ¶ 24, 15 A.3d 1263. "'We must affirm findings of fact if they are supported by substantial evidence in the record, even if the record contains inconsistent evidence . . . .'" *Id.* (quoting *Friends of Lincoln Lakes*, 2010 ME 18, ¶ 13, 989 A.2d 1128). We will vacate an agency's factual findings only if the record contains no competent evidence to support them. *Id.*

[¶13] The statute guiding the Board's determination of a grid-scale wind project's impact on the character and uses of a SRSNS requires the Board to consider six criteria but does not require it to assign more or less weight to any one criterion. 35-A M.R.S. § 3452(3) (2013). Because this statute does not compel a result contrary to that reached by the Board, we defer to the Board's evaluation.

[¶14] Although the Cupraks challenge the credibility and significance of some of the evidence in the record, the Board was free to make its own credibility determinations with respect to the conflicting evidence before it. *See Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 7, 757 A.2d 773 (explaining that a decision-maker makes its own credibility determinations when conducting a de novo review). Its findings regarding the project's visual impact are supported by evidence that Saponac Pond is lightly used, that the surrounding area is developed, and that the project would not have an unreasonable adverse impact on the viewshed of the pond. The Board's findings and conclusion are supported by substantial evidence in the record. We therefore uphold the Board's decision.

8

## C. Ex Parte Communications

[¶15] Finally, the Cupraks contend that the Board violated their due process rights by communicating with PW and PF without including them or giving them an opportunity to comment on the materials communicated. The Board counters that 5 M.R.S. § 9055 (2013) prohibits ex parte communications only in an "adjudicatory proceeding," which is defined as "any proceeding before an agency in which the legal rights, duties or privileges of specific persons are required by constitutional law or statute to be determined after an opportunity for hearing," 5 M.R.S. § 8002(1) (2013). Because the decision to hold an adjudicatory hearing was within the Board's discretion pursuant to 38 M.R.S. § 341-D(4), the Board argues that the opportunity for a hearing in this case was not a matter of constitutional or statutory law, and that 5 M.R.S. § 9055 therefore does not prohibit ex parte communications.

[¶16] Although section 9055 provides that "[i]n any *adjudicatory proceeding*, no agency members . . . may communicate directly or indirectly in connection with any issue of fact, law or procedure, with any party or other persons legally interested in the outcome of the proceeding, except upon notice and opportunity for all parties to participate," 5 M.R.S. § 9055(1) (emphasis added), we have not held that there is a bright-line rule that *permits* ex parte communications in all nonadjudicatory proceedings. We have instead concluded that the contours

of due process in an administrative proceeding, particularly a nonadjudicatory, fact-gathering proceeding, depend upon the nature of the proceeding, the nature of the alleged right involved, and the possible burden that additional procedures would place on the proceeding. *Cunningham v. Kittery Planning Bd.*, 400 A.2d 1070, 1079 (Me. 1979); *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 16, 82 A.3d 148. Other factors that we take into account include

> the gravity of the ex parte communications; whether the contacts may have influenced the . . . ultimate decision; whether the party making the improper contacts benefited from the . . . ultimate decision; whether the contents of the communications were unknown to opposing parties, who therefore had no opportunity to respond; and whether vacation of the . . . decision and remand for new proceedings would serve a useful purpose.

*Duffy*, 2013 ME 105, ¶ 19, 82 A.3d 148 (quotation marks omitted).

[¶17]    The Cupraks have challenged as ex parte the following communications: (1) a letter sent from PW to the Board chair seeking to exclude the Cupraks' responses to PW and PF's notice of appeal; (2) materials sent by PF to the Board in preparation for the March 21, 2013, public meeting; and (3) three letters from the Board to PW, all of which advised PW that it could not supplement the administrative record with the additional evidence that it sought to proffer on

appeal.[2] The Cupraks have not argued that these communications between PF, PW, and the Board harmed them in any substantial way, and there is no evidence suggesting that the communications resulted in "'procedural unfairness.'" *Id.* ¶ 18 (quoting *Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 32, 942 A.2d 1202).

[¶18] Although the Board did not hold a formal hearing, it gave the Cupraks the opportunity to participate and the Cupraks have not argued that the proceedings before the Board were fundamentally unfair. *See id.* ¶¶ 20-21; *Cunningham*, 400 A.2d at 1079. We therefore conclude that the communications at issue did not affect the Cupraks' due process rights.[3]

[¶19] For the reasons stated above, we affirm the decision of the Board.

The entry is:

> Judgment affirmed.

---

[2] The Cupraks also refer to "numerous other communications" occurring ex parte between the Board and the PW. However, of the approximately ten separate communications referred to in the Cupraks' appellate brief, only the three letters are actually included in the administrative record that the parties provided to us.

[3] Although it may be good practice for state agencies to send copies of all correspondence to all parties involved in the application process, it is up to the Legislature to mandate that such practice be undertaken during the application process.

**On the briefs:**

Alexander F. Cuprak and Rhonda Cuprak, pro se appellants

Rufus E. Brown, Esq., Brown & Burke, for appellants Passadumkeag Mountain Friends et al.

Janet T. Mills, Attorney General, and Margaret A. Bensinger, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Board of Environmental Protection

P. Andrew Hamilton, Esq., Jonathan A. Pottle, Esq., and Ryan P. Dumais, Esq., Eaton Peabody, for appellee Penobscot Forest, LLC

Katherine A. Joyce, Esq., and Mary E. Costigan, Esq., Bernstein Shur, for appellee Passadumkeag Windpark LLC

**At oral argument:**

Alexander F. Cuprak and Rhonda Cuprak, pro se appellants

Rufus E. Brown, Esq., for appellants Passadumkeag Mountain Friends et al.

Margaret A. Bensinger, Asst. Atty. Gen., for appellee Board of Environmental Protection

Katherine A. Joyce, Esq., for appellee Passadumkeag Windpark LLC

Board of Environmental Protection number BEP L-25597
FOR CLERK REFERENCE ONLY