STATE OF MAINE                              SUPERIOR COURT
LINCOLN, SS.                                CIVIL ACTION
                                            DOCKET NO. AP-17-04


RICHARD HORTON,
            Petitioner
                                            DECISION AND ORDER

    v.

MAINE UNEMPLOYMENT
INSURANCE COMMISSION,
            Respondent


## INTRODUCTION

This matter is before the court on an appeal by Richard Horton ("Claimant") from the opinion of the Maine Unemployment Insurance Commission ("Commission"), which affirmed and adopted the decision of an Administrative Hearing Officer concluding that Mr. Horton was discharged for misconduct within the meaning of 26 M.R.S. § 1193(2). This appeal has been brought in accordance with 26 M.R.S. § 1194(a), 5 M.R.S. §§ 1101-1108 (Administrative Procedure Act), and M.R. Civ. P. 80C.

## FACTUAL & PROCEDURAL BACKGROUND

Claimant began his employment with Steps Opioid Addiction Treatment, LLC ("Steps") on Apr. 18, 2016 as a full-time substance abuse counselor in Rockland. (C.R. 46-47). Steps provides treatment to persons addicted to opiates through group therapy and medication, principally Suboxone. (C.R. 48).

1

Every month, Steps is required to perform a pill count with 25% of its clients. (C.R. 51). Although the number of pill counts to be performed is calculated monthly, Steps generally conducts them on a weekly basis. (C.R. 51). The pill counts serve two purposes: first, they ensure that the clients are appropriately taking their medication; and second, since Suboxone is a controlled substance, the State closely monitors its distribution. If the office does not perform the requisite number of pill counts, it could be subject to State disciplinary violations. (C.R. 49-50). Claimant's supervisor, Donald Kent, spoke with Claimant several times before Sept. 22, 2016 about the importance of conducting pill counts for those reasons. (C.R. 49-50).

On Sept. 22, 2016, Mr. Kent emailed Claimant stating that he learned Claimant had not been conducting the pill counts as they had discussed and that it was ultimately Claimant's responsibility to make sure those pill counts occur. (C.R. 77-78). In the email, Mr. Kent explained the importance of performing the counts, both for regulatory purposes and the safety of the clients that would be without Steps' services if the office was closed due to violations. (C.R. 78). He requested that Claimant initiate and document the pill counts as soon as possible. (C.R. 78).

Mr. Kent again emailed Claimant one week later, on Sept. 29, 2016. (C.R. 77). Mr. Kent expressed his concerns regarding pill counts still not being performed. (C.R. 77). Mr. Kent believed that pill counts may not have been included in Claimant's initial training, so he sent someone to train him. (C.R. 77). The email

2

ended by clearly stating that his Sept. 22 email was intended as a verbal warning, and that this email was intended as a final written warning and the last step before termination. (C.R. 77).

Claimant's last recorded pill count was conducted Nov. 14, 2016. (C.R. 52).

On Dec. 1, 2016, Mr. Kent emailed Claimant yet again to set up a meeting with Claimant and another employee on Friday, Dec. 9, 2016. (C.R. 56). Suspicious of this email, Claimant called Mr. Kent to ask if he was being terminated. (C.R. 56).

Since Claimant asked directly, Mr. Kent answered his question even though he did not intend to tell Claimant of his termination until the following week. (C.R. 48). Mr. Kent says that he told Claimant he was being terminated due to safety concerns, including both the failure to conduct pill counts as well as his suspicion that Claimant was being lenient about clients' failed urine drug screens. (C.R. 49, 52-53). Claimant says that Mr. Kent told him he was being terminated because he was being too friendly with the clients and because there was a safety concern, but Mr. Kent did not go into further detail and did not mention the pill counts. (C.R. 57). Also during this phone call, Mr. Kent stated that he wanted Claimant to work through the following week before leaving employment. (C.R. 56).

Claimant reported for work on Dec. 2, 2016. (C.R. 56). Claimant testified that he ran his client therapy groups then attempted to access his computer records, but his computer had been shut off and he was told to go home. (C.R. 57).

3

Claimant admits being behind in pill counts, but disputes the characterization that he "stopped" them. (C.R. 60). His understanding was that the pill counts only needed to be conducted within the month, despite the email from Mr. Kent saying that they must be done weekly, therefore if he fell behind at the beginning of the month, he could catch up by performing more counts at the end of the month. (C.R. 61). Claimant asserts that he performed the pill counts with the assistance of another employee who usually initiated the process. (C.R. 58). He also claims that there could be up to 30 people in the office during the half hour between group sessions, during which he had do all his work as well as meet with clients. (C.R. 58-59). He was overwhelmed by how busy the office was. (C.R. 62).

On Jan. 25, 2017, Deputy's Decision No. 35 was issued denying Claimant unemployment compensation benefits for misconduct, finding that he had been discharged due to violation of company policy by stopping performing pill counts after receiving a final written warning. (C.R. 74).

Claimant appealed to the Department of Labor. A Hearing was held on Feb. 14, 2017, at which Claimant and Mr. Kent testified to the facts above. (C.R. 36-72).

On Feb. 20, 2017, Claimant mailed a letter to the Division of Administrative Hearings attempting to add more information to the record produced at the Hearing. (C.R. 82). In this letter, Claimant states that he was so flustered at the Hearing that he could not properly answer some of the Hearing Officer's questions. (C.R. 82).

4

Claimant explains that he did not contact Mr. Kent when he fell behind on pill counts because he did not believe it was a problem, since he had fallen behind in the past and made up the pill counts in the following weeks with no comments from Mr. Kent. (C.R. 82). Claimant explained that during the Dec. 1, 2016 phone call, Mr. Kent told him that the corporate office had wanted to terminate him two weeks prior. (C.R. 82). But two weeks prior was Nov. 15, and his last pill count was on Nov. 14, 2016, and so he was not behind at that point, therefore the corporate office could not have terminated him due to lack of pill counts. (C.R. 82).

The Hearing Officer issued his decision on Case No. 2017-A-00414 on Feb. 24, 2017,[1] affirming Deputy's Decision No. 35 and making findings of fact consistent with the facts as laid out above. (*See* C.R. 32-35). The Hearing Officer found that Claimant was terminated due to his failure to perform his job duties, and was not compelled by Claimant's arguments that he was too busy to perform the pill counts and had to rely on another employee to perform them. (C.R. 34). The findings emphasized Mr. Kent's two emails regarding the importance of the pill counts and that Claimant should have known that his termination would result from

---

[1] Claimant's letter to the Division of Administrative Hearings was received on Feb. 24, 2017. Although it arrived on the same day the Hearing Officer issued his decision, presumably the Hearing Officer had time to review the letter before making his decision. This is true even though the information contained within the letter was not included in his findings of fact, since the Hearing Officer may have excluded it pursuant to his determination of its credibility.

5

his failure to perform them. (C.R. 34). As this was deemed misconduct, Claimant's denial of benefits was affirmed. (C.R. 35).

Claimant appealed to the Commission. (C.R. 29). On Mar. 29, 2017, in Decision No. 17-C-01038, the Commission affirmed Administrative Hearing Officer Decision No. 2017-A-00414. (C.R. 25-26). The Commission reaffirmed this decision on May 4, 2017 in Decision No. 17-C-01501 upon request for reconsideration. (C.R. 1-2). Claimant now appeals to the Superior Court.

## DISCUSSION

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (*quoting Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dept. of Envtl. Prot*, 2005 ME 50, ¶ 7, 870 A.2d 566. The party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Anderson v. Maine Pub. Employees Ret. Sys.,* 2009 ME 134, ¶ 3, 985 A.2d 501.

6

This court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lake v Bd. of Envtl. Prot.*, 2001 ME 18 ¶13. The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the witnesses and evidence, supported by substantial evidence in the record, should not be disturbed by this court. *Cotton v Maine Emp. Sec. Comm'n*, 431 A.2d 637, 640 (Me. 1981). The issue is not whether the court would have reached the same result the agency did, but whether the "record contains competent and substantial evidence that supports the result reached" by the agency. *Seider v. Bd. of Examiners of Psychologists,* 2000 ME 206, ¶ 8, 762 A.2d 551 (*quoting CWCO, Inc. v. Superintendent of Ins.,* 1997 ME 226, ¶ 6, 703 A.2d 1258).

An individual is disqualified from receiving unemployment insurance benefits if he was discharged for misconduct connected with his work. 26 M.R.S. § 1193(2). The employer bears the burden of proving that the termination was due to misconduct. 12-172 C.M.R. ch. 18, § 2 (2017). "Misconduct" requires: (1) "a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior" and (2) manifestation of "a disregard for a material interest of the employer." 26 M.R.S. § 1043(23). A presumption of manifestation of disregard for a material interest of the employer may be created by "[r]efusal,

7

knowing failure, or recurring neglect to perform reasonable and proper duties assigned by the employer." 26 M.R.S. § 1043(23)(A)(1).

The Sept. 22 email supports a finding that it was Claimant's responsibility to perform pill counts, even if another employee was involved. Between the two emails, Claimant was explained the importance of the pill counts and the consequences of their not being conducted timely. Claimant should have known that the emails themselves constituted a verbal and a final written warning regarding his employment, since it was clearly stated. Claimant himself admitted that he knowingly fell behind on the pill counts, albeit with the intention to catch up at a later date.[2] The Hearing Officer found that although Claimant asserts that the workplace was busy and he relied on another employee to perform pill counts, he should have informed his supervisor that he did not have the appropriate amount of time to complete the pill counts.

Thus, the record supports a finding that the pill counts were Claimant's responsibility, that he knowingly failed to perform them weekly, as was explained to him in the emails, and that this refusal to perform his job duties was in disregard

---

[2] Although Claimant is adamant that he did not "stop" the pill counts, but merely fell behind with the intent to catch up, the difference for the Hearing Officer's purposes is merely semantic. Claimant clearly was not performing the pill counts timely, regardless of whether he intended to make them up at a later date. The failure to timely conduct pill counts is a failure to perform his job responsibilities, regardless of whether it is characterized as "stopping" or "falling behind."

for Steps' safety interests in ensuring that their clients take their medications properly and keeping the office open by complying with State regulations.

Claimant argues that he was not informed of the true reason he was terminated and that the Steps corporate office would not respond to his request for such reason. Claimant said that he was told he was terminated for safety reasons and for being too friendly with clients. Mr. Kent said he told Claimant he was terminated for safety reasons regarding pill counts and being lenient with urine drug tests. To the extent these differ, the Court should not disturb the Hearing Officer's determinations on the credibility of the testimony. It was reasonable for the Hearing Officer to read the record to show that the safety concern over the pill counts was the greater of the issues, in addition to the one agreed upon, and it was therefore reasonable for the Hearing Officer to focus on that portion of Claimant actions, regardless of whether Claimant was also too friendly with clients or too lenient with urine drug tests. Therefore, there is no error in the Hearing Officer's finding of misconduct based on safety concerns. As for Claimant's complaint that Steps did not respond to his written request for the reasons for his termination, this may be actionable, but it is not a concern within this 80C appeal to which Steps is not currently a party.

Claimant also argues that Steps attempted to take advantage of him by planning to let him work one more week after deciding to terminate him, then firing him the day after telling him this without allowing him to work that extra week. This

is similarly an issue between Claimant and Steps, who is not party to this action. It is, therefore, inappropriate to consider this contention in this 80C appeal.

Next, Claimant argues that he did not realize that falling behind on pill counts was a problem since he had fallen behind before with no repercussions. The fact that Claimant had been behind on pill counts in the past without being disciplined is not convincing to overturn the Hearing Officer's decision. To start, this piece of information is contained in the letter that Claimant sent after the Hearing, is unsworn, and is not notarized. Although the Hearing Officer need only make his decision "on the basis of facts," and not necessarily on the basis of facts presented at the Hearing, the Hearing Officer determines how much weight to give a particular piece of evidence. 26 M.R.S. § 1194(2). Thus, if the Hearing Officer decided not to rely on this information in his findings of facts because he deemed it not credible, the Court should not disturb that. Additionally, the September emails from Mr. Kent clearly indicate that Claimant's being behind on pill counts would no longer be tolerated. So even if being behind was not previously a problem, Claimant should have known that conducting pill counts timely was now a concern of management.

Lastly, Claimant asserts that the corporate office wanted to terminate him two weeks prior to his actual termination, but his pill counts were up to date two weeks before he was terminated, so this cannot be the true reason for his termination. First, the facts behind this assertion were included in the letter sent after the Hearing. For

10

the same reasons as above, if the Hearing Officer determined that the letter was not credible, then it was within his province to disregard it. Additionally, the corporate office may have had other reasons to terminate him two weeks prior, but then after two consecutive weeks without conducting pill counts, decided that safety concerns due to lack of pill counts was a better reason to terminate Claimant. Thus, even if the Hearing Officer considered that the corporate office wanted to terminate Claimant two weeks prior, it was reasonable for him to find that when Claimant was actually terminated on Dec. 2, 2016, it was due to lack of pill counts.

## CONCLUSION

For the foregoing reasons, therefore, the decision of the Maine Unemployment Insurance Commission finding that the Claimant voluntarily left her employment without good cause attributable to that employment, within the meaning of 26 M.R.S. §1193(1)(A), is affirmed and the Claimant's Rule 80C appeal is denied.

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: January 8, 2018

Daniel I. Billings
Justice, Maine Superior Court

11