STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-17-31

DEBORAH CHAPMAN,                    )
                                    )
            Claimant                )
                                    )        **DECISION AND ORDER**
        v.                          )
                                    )
MAINE UNEMPLOYMENT                  )
INSURANCE COMMISSION,               )
                                    )
            Respondent              )

## INTRODUCTION

This matter is before the court on appeal by Deborah Chapman ("Claimant") from the opinion of the Maine Unemployment Insurance Commission ("the Commission"), which affirmed and adopted the decision of an Administrative Hearing Officer concluding that Claimant was discharged for misconduct within the meaning of 26 M.R.S. § 1193(2). This appeal has been brought in accordance with 26 M.R.S. § 1194(a), 5 M.R.S. §§ 1101-1108, and M.R. Civ. P. 80C.[1]

## BACKGROUND

Claimant was employed by A Child's Nature ("ACN"), a childcare program, from November 1, 2016 to January 16, 2017. (C.R. 22-23). Although she applied

---

[1] Originally docketed as Deborah Chapman v. A Child's Nature, Claimant concedes that this is an 80C appeal and the proper respondent is the Commission, not her former employer. (Cl.'s Br. 1).

1

for a lead teacher position, Claimant was hired as an assistant teacher. (C.R. 37). Claimant believed that she was to be an assistant teacher only temporarily, until the results of her fingerprint test were received. (C.R. 84-85). ACN's executive director stated that Claimant was told she was hired for the assistant teacher position and was not promised a later transition to a lead teacher position. (C.R. 36-38).

The executive director explained to Claimant that a chief rule of ACN was for employees to give kind and loving care to the children. (C.R. 29).

On or around November 3, 2016, the executive director saw Claimant grab a child by the arm and immediately informed Claimant that such grabbing was unacceptable. (C.R. 27). Claimant denies grabbing the child's arm. (C.R. 44-45).

On or around November 30, 2016, Claimant pulled a wagon even though a child lay in it screaming that he did not want to be pulled. After this, the lead teacher informed Claimant that such behavior was inappropriate. (C.R. 27, 64-65). Claimant stated that she was trying to get the child, who often refused to listen to directions, to come inside and thought he would follow if she pulled his wagon but he jumped on the back of the wagon to prevent her from taking it. (C.R. 66).

On December 6, 2016, a parent complained to the executive director that Claimant had raised her voice and had escalated emotions with a child. (C.R. 28, 70). Shortly after this complaint, the executive director informed Claimant that she needed to be more caring and compassionate towards the children. (C.R. 28).

2

At least once, near the end of 2016, a child pushed against Claimant and Claimant pushed the child back. (C.R. 32, 71). Claimant admitted that if the child pushed her, she pushed back. (C.R. 77). ACN was concerned that this conduct was contrary to their philosophy of care and was a potential liability issue. (C.R. 32).

Near the end of 2016, a parent complained that Claimant was short and uncaring toward the children in the afternoon when she found the children difficult. At least once in response to disobedience, Claimant took away snacks from children as they ate. (C.R. 71-73).

On January 2, 2017[2], the executive director met with Claimant, put her on probation, and switched her to a different classroom. (C.R. 75-76). Claimant signed the probation notice, which informed her that her employment at ACN was in jeopardy. (C.R. 75-76). The terms of the probation required Claimant to exhibit more caring and compassion toward the children. (C.R. 26, 75-79).

After January 2, 2017, a supervising teacher told Claimant to prevent children from playing near a deep pool of icy melt-water. Claimant, however, allowed the children to play near the pool. (C.R. 80-81). Claimant believed that the supervising teacher was overly sensitive to the dangers of playing on ice, and that the children would be fine. (C.R. 51).

---

[2] The Hearing Officer incorrectly wrote "January 2, 2016," instead of "January 2, 2017."

3

After January 2, 2017, a co-worker informed Claimant that she should not allow an infant to sleep with a hooded sweatshirt on his head, and that it was against New Hampshire regulations to do so. (C.R. 80-81). The co-worker told ACN's executive director that after fifteen minutes Claimant had not removed the hood, while Claimant states that it was only two or three minutes and that this was not against New Hampshire regulations. (C.R. 80-81, 50-52).[3]

On January 16, 2017, ACN ended Claimant's employment because she did not give care to the children in accordance with its rules and philosophy. (C.R. 23, 80-81).

Claimant applied for unemployment benefits and was denied in Deputy Decision No. 22, dated February 22, 2017. (C.R. 59-60). She appealed that decision and the Division of Administrative Hearings ("the Division") held a hearing on March 15, 2017 at which Claimant and ACN's executive director testified. (C.R. 15-55). The Division issued Decision No. 2017-A-00884 dated March 20, 2017, affirming Deputy Decision No. 22, and finding that Claimant was terminated for misconduct and therefore not eligible for benefits. (C.R. 11-14). The Hearing Officer issuing the Division's decision found the version of facts provided by ACN's

---

[3] The excerpt of the New Hampshire Code of Administrative Rules provided in the Certified Record does not explicitly prohibit infants from being laid to rest with hoods on their heads. (*See* C.R. 95-96). Nevertheless, regardless of state law or rule, Claimant disobeyed a direction given by another teacher for the safety of the children.

executive director to be more credible than Claimant's. (*Compare* C.R. 11-12 *with* C.R. 15-55). Claimant appealed to the Commission. (C.R. 4-10). The Commission issued Commission Decision No. 17-C-01295 dated May 10, 2017, affirming and adopting the Division's decision.[4] (C.R. 1-3). Claimant now properly appeals to the Superior Court pursuant to M.R. Civ. P. 80C.

## STANDARD OF REVIEW

Judicial review of an administrative agency decision is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (*quoting Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lake*, 2001 ME 18, ¶ 13.

The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the witnesses and evidence, supported by substantial evidence in the record, should not be disturbed by this court. *Cotton v Maine Employment Security Commission*, 431 A.2d 637, 640 (Me. 1981). The issue is not whether the court would have

---

[4] The Commission's decision modified the Division's decision to find Claimant disqualified as of January 15, 2017, rather than January 15, 2016. The date of disqualification is not at issue.

5

reached the same result the agency did, but whether the "record contains competent and substantial evidence that supports the result reached" by the agency. *Seider v. Board of Examiners of Psychologists,* 2000 ME 206, ¶ 8, 762 A.2d 551 (*quoting CWCO, Inc. v. Superintendent of Insurance,* 1997 ME 226, ¶ 6, 703 A.2d 1258).

## DISCUSSION

An individual is disqualified from receiving unemployment insurance benefits if she was discharged for misconduct connected with her work. 26 M.R.S. § 1193(2). The employer bears the burden of proving that the termination was due to misconduct. 12-172 C.M.R. ch. 18, § 2 (2017). "Misconduct" requires: (1) "a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior" and (2) manifestation of "a disregard for a material interest of the employer." 26 M.R.S. § 1043(23).

A presumption of manifestation of a disregard for a material interest of the employer may be created from several actions, including an "unreasonable violation of rules that are reasonably imposed and communicated and equitably enforced"; "refusal, knowing failure, or recurring neglect to perform reasonable and proper duties assigned by the employer"; "insubordination or refusal without good cause to follow reasonable and proper instructions from the employer"; or an "unreasonable violation of rules that should be inferred to exist from common knowledge or from the nature of the employment." 26 M.R.S. §§ 1043(23)(A)(1)-(3), (9).

6

"Misconduct" may not be found solely on "[a]n isolated error in judgment or failure to perform satisfactorily when the employee made a good faith effort to perform the duties assigned." 26 M.R.S. § 1043(23)(B)(1).

As Claimant puts it in her brief, this is a "she-said, she-said" situation, referring to the competing versions of facts provided by Claimant and ACN's executive director. Since the Hearing Officer's findings of fact matched the testimony of ACN's executive director, he must have found ACN's executive director to be more credible than Claimant. As there is nothing in the record indicating a lack of believability regarding the executive director's testimony, the Court will not disturb the Hearing Officer's credibility determination and will analyze the circumstances surrounding Claimant's termination through the executive director's version of the facts.

Based upon the situations described by ACN's executive director where Claimant pulled a child in a wagon against his will; where she raised her voice at and pushed children; and where she took away children's snacks for disobedience, there is substantial evidence to support the Hearing Officer's determination that Claimant exhibited a pattern of behavior contrary to the core principle of ACN to provide kind and loving care to the children.

Additionally, after acknowledging that she had read a letter warning her that she was on probation and her employment at ACN was at risk, Claimant did not

7

obey instructions to keep children from playing in or near icy melt-water and to remove a hood from an infant's head while he slept. Along with the situations exhibiting a failure to provide kind and loving care, this constitutes substantial evidence of unreasonable violations of rules reasonably imposed and equitably enforced.

Although the Hearing Officer's determination of "misconduct" rested on its decision that there was an "unreasonable violation of rules that are reasonably imposed and communicated and equitably enforced," this Court also finds a presumption of a disregard for a material interest of the employer through other means. Claimant refused or knowingly failed to prevent children from playing in or near icy melt-water and sleeping with hoods on their heads – tasks reasonably asked of her by her co-workers and supervisors. Additionally, through her actions, Claimant violated rules that she could have inferred existed due to the ACN's core principle of providing kind and loving care to the children. This violation of implicit and explicit rules and directions, substantially supported by the incidents in the record, also provides a presumption of Claimant's manifestation of disregard for ACN's material interest of providing kind and loving care.

Viewing the string of incidents which led to Claimant's termination, there is substantial evidence to uphold the Hearing Officer's decision that these were not

8

isolated incidents, but instead were multiple situations where Claimant knowingly failed to abide by ACN's policies and procedures.

## CONCLUSION

For the foregoing reasons, therefore, the decision of the Maine Unemployment Insurance Commission finding that the Claimant was discharged for misconduct within the meaning of 26 M.R.S. § 1193(2) is affirmed and Claimant's Rule 80C appeal is denied.

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED:   April 19, 2018

William R. Stokes
Justice, Maine Superior Court

9