STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, ss                                      CIVIL ACTION
                                                  DOCKET NO. AP-18-20

DAVID BOYER,                          )
                                      )
            Petitioner                )
                                      )          **DECISION AND ORDER**
    v.                                )          **ON RULE 80C APPEAL**
                                      )
DEPARTMENT OF THE                     )
SECRETARY OF STATE                    )
                                      )
            Respondent                )
                                      )
    and                               )
                                      )
MAX PATRICK LINN,                     )
                                      )
            Intervenor.               )

## INTRODUCTION

The matter before the Court is an appeal by Max Patrick Linn from the

"Ruling of the Secretary of State on the Challenge Brought by David Boyer of

Portland Against the Primary Petitions Filed on Behalf of Max Patrick Linn, a

Republican Party Candidate for United States Senate," dated April 5, 2018, as

supplemented on April 24, 2018.[1] This appeal has been brought in accordance with

21-A M.R.S. § 337(2)(D) and M.R. Civ. P. 80C.

---

[1] As explained below, the original Rule 80C appeal in this matter was brought by David Boyer from the Secretary of State's ruling of April 5, 2018. That ruling kept Mr. Linn on the primary ballot with 2,018 valid signatures. As a result of his Supplemental Ruling of April 24, 2018, however, the Secretary of State concluded that Mr. Linn had failed to submit at least 2,000 valid signatures on his nomination petition. On April 25, 2018, Mr. Boyer withdrew his appeal and Mr.

1

## BACKGROUND

On March 15, 2018, Max Patrick Linn of Bar Harbor, a prospective candidate for the Republican Party nomination to the United States Senate, timely filed a nominating petition containing a total of 2,248 valid signatures on 638 petitions, based on the certification by municipal registrars and review by the Secretary of State Elections Division staff. (Certified Record "C.R." 7, 8).

On March 22, 2018 and pursuant to 21-A M.R.S. § 337(2)(A), David Boyer, the political director for Mr. Linn's competitor, timely filed a challenge to Mr. Linn's nominating petition in the Office of the Secretary of State. The challenge set forth several grounds, including that at least four signatures were those of deceased voters, several petitions contained duplicate voter signatures, and suspected forgeries. (C.R. 6).

On March 29, 2018, a hearing was held by the Secretary of State ("the Secretary") on Mr. Boyer's challenge, conducted pursuant to 21-A M.R.S. § 337(2)(B) and the Maine Administrative Procedures Act, 5 M.R.S. §§ 8001 *et seq.* ("the First Hearing"). (C.R. 5). Mr. Boyer and Mr. Linn were both represented by counsel at the First Hearing and both testified and presented evidence. (C.R. 5).

---

Linn, as an intervenor, was permitted without objection to appeal the Supplemental Ruling of April 24, 2018.

2

At the First Hearing the following witnesses testified: Mr. Linn; Mr. Boyer; Matthew Foster and Mark Foley, voters whose names appeared on a petition; Tiffany Ford, a forensic document examiner; and Eric Doherty, Susan MacKay, and Seth Carey, circulators for Mr. Linn's campaign. Thirty-one exhibits were admitted into evidence. (*See* C.R. 3).

Mr. Foster and Mr. Foley both testified that neither they nor close family members of theirs had signed the petitions, despite their names appearing on them.[2] (C.R. 2, pp. 75-76, 84-85). Four affidavits from voters attested that the affiants had not signed petitions on which their names appeared. (Ex. 3, 5, 8, 31).[3] Counsel for Mr. Boyer also presented five obituaries with names and towns of residence matching those on petitions. (Ex. 1, 2, 4, 6, 7). The record establishes that Ms. Ford testified in her capacity as a forensic document examiner and found multiple signatures on various petitions that appeared to either be unnaturally written or written by the same person. (C.R. 2, pp. 89-91, 92-94; Ex. 30).

The Secretary issued his written decision on April 5, 2018. (*See* C.R. 1). After reviewing the evidence, the Secretary invalidated 29 duplicate signatures. (Ex. 9; C.R. 5, p. 4). With respect to three petitions (Exhibits 12, 26, and 27), the Secretary

---

[2] Mark Foley also testified at the hearing that his son Alex who resides in England did not sign the petition on which his name appears. In addition, Matthew Foster testified that his father, Philip, whose name appeared on a petition, had died in 2009.

[3] Exhibit "Ex." refers to the numeration of exhibits admitted into evidence at the two hearings before the Secretary, found at C.R. 3.

found sufficient evidence to invalidate one or two signatures but upheld the validity of the remaining signatures. The Secretary found evidence of fraud sufficient to invalidate ten petitions in their entirety (Exhibits 13, 15-19, 21, 23-25), including signatures originally counted as valid. In regards to one petition (Exhibit 28), the circulator whose name appears on the petition testified that he did not sign that petition, and therefore the Secretary also invalidated that petition in its entirety. Lastly, the Secretary found that one petition (Exhibit 29) had no invalid signatures.

In total, the Secretary invalidated fourteen petitions, eleven in their entirety and three partially, containing 201 newly invalidated signatures. In addition to the 29 duplicate signatures, this brought the total to 230 invalid signatures previously counted as valid, leaving Mr. Linn with 2,018 valid signatures – 18 more than the minimum required to qualify for the primary election ballot.

On April 10, 2018, Mr. Boyer filed this timely appeal to the Superior Court, pursuant to 21-A M.R.S. § 337(2)(D). Mr. Boyer alleged that the Secretary erred by not invalidating in its entirety any petition containing a signature deemed invalid at the First Hearing and by not invalidating all other petition forms circulated by the same circulators whose petitions were invalidated for fraud at the First Hearing.

The certified record was filed with the Court on April 18, 2018. Briefs by Mr. Boyer and the Secretary were filed on April 19, 2018. At the same time, Mr. Boyer also filed a Motion to Take Additional Evidence pursuant to M.R. Civ. P. 80C(e)

and 5 M.R.S. § 11006(1)(B), seeking to add evidence of additional fraudulent or otherwise invalid signatures.

Oral argument was held on April 20, 2018 by this Court. After argument, the Court ordered the Secretary to take additional evidence as soon as possible. The Court's order was based on a finding that the proffered additional evidence would be material and although it theoretically could have been brought before the Secretary at the First Hearing, due to the accelerated time constraints found in 21-A M.R.S. § 337, as a practical matter the evidence could not have been found and brought before the Secretary at that time.[4]

The Secretary held its hearing on additional evidence on April 24, 2018 ("the Second Hearing"), conducted pursuant to 5 M.R.S. §§ 8001 *et seq.* and 21-A M.R.S. § 337(2). Both Mr. Boyer and Mr. Linn were represented. At the hearing, the Secretary heard testimony from Mr. Boyer, Mr. Linn, and Susan MacKay, a circulator for Mr. Linn's campaign. Eleven exhibits were admitted into evidence. (*See* Exhibits 32-42).

At the Second Hearing, Mr. Boyer presented evidence of three duplicate signatures and 41 signatures of voters not enrolled in the Republican Party. (Ex. 32-

---

[4] At oral argument on both April 20 and April 25, 2018, Mr. Linn objected to the Court's order to take additional evidence, stating that the evidence was actually available to Mr. Boyer at the time of the First Hearing. The Court reaffirms its determination that in the particular circumstances of this case, with the extremely compressed statutory time limits, the evidence could not have been presented within the meaning and contemplation of 5 M.R.S. § 11006(1)(B).

35 and 38 & 39). Mr. Linn does not dispute these findings,[5] and accordingly, it is undisputed that 44 signatures must be invalidated. Evidence in the form of an obituary was submitted to prove that one voter whose name appeared on the petition marked as Exhibit 37 is deceased. (Exhibits 36, 37).

Mr. Linn collected and presented affidavits from 14 persons verifying their signatures on the petition marked as Exhibit 25 that had been invalidated after the First Hearing. (Ex. 40). Mr. Linn testified that one other person orally confirmed that the signature on the petition was his, but he did not sign an affidavit. Ms. MacKay testified that she specifically remembered the number of signatures on the petition marked as Exhibit 25, and that sometime after she swore her circulator's oath and relinquished custody of it, five additional names invalidated by the Secretary after the First Hearing were added to the bottom of the petition, leading the Secretary to find fraud and to invalidate that petition in its entirety. Regarding the petition marked as Exhibit 12, Ms. MacKay specifically remembered collecting some signatures but did not recognize other signatures on the petition that included two signatures invalidated by the Secretary after the First Hearing because one person was deceased and the second was written by someone other than the voter.

The Secretary issued his "Supplemental Ruling of the Secretary of State Pursuant to Superior Court Order to Consider Additional Evidence" later in the day

---

[5] *But see* note 4 *supra*.

on April 24, 2018. In addition to the 44 admittedly invalid signatures, the Secretary invalidated the entire petition marked as Exhibit 36 for fraud based on the presence of a deceased voter's name and six other signatures marked by the municipal clerk as being signed by another person. This action invalidated three signatures previously counted as valid.

After considering the affidavits collected by Mr. Linn and Ms. MacKay's testimony regarding the petition marked as Exhibit 25, which he found credible, the Secretary reversed his decision to invalidate this petition in its entirety. The Secretary found fraud in the five added signatures written at the bottom but reinstated the validity of 19 signatures originally counted as valid by the municipal clerk. The Secretary also found Ms. MacKay's testimony regarding the petition marked as Exhibit 12 credible and concluded that several signatures on the petition should remain valid.[6]

The Secretary's ultimate finding was as follows:

> The petition forms that I am invalidating in their entirety are those petitions for which the challenger has presented sufficient proof of fraud to undermine the validity of the circulator's oath and the validity of the entire petition, in accordance with section 335(9). I find, however, that the challenger has not met his burden of proving sufficient evidence to support invalidating other petitions circulated by the same individuals that were not discussed or entered into evidence at either hearing.

---

[6] The signatures on Exhibit 12 remaining valid were deemed valid after the First Hearing, where the Secretary only partially invalidated this petition. This determination therefore does not change the total number of valid signatures possessed by Mr. Linn.

As a result of the Secretary's supplemental findings, he concluded that 47 signatures were newly invalidated and 19 signatures were re-validated, for a net of 28 signatures newly invalidated. This brought Mr. Linn's total to 1,990 signatures – 10 fewer than the number required to appear on the primary ballot.

On April 25, 2018, the parties appeared before this Court again for oral argument. Mr. Boyer withdrew his challenge on the record, agreeing with the result of the Secretary's supplemental decision, but maintaining an objection to the Secretary's interpretation of law. Mr. Linn then essentially adopted the prior appeal and alleges that the Secretary's decision constituted an abuse of discretion.

## STANDARD OF REVIEW

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Board of Environmental Protection*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (*quoting Friends of Lincoln Lakes v. Board of Environmental Protection*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Department of Environmental Protection*, 2005 ME 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has

8

the burden of persuasion on appeal. *Anderson v. Maine Public Employees Retirement System,* 2009 ME 134, ¶ 3, 985 A.2d 501. In particular, a party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Stein v. Me. Crim. Justice Academy,* 2014 ME 82, ¶ 11, 95 A.3d 612.

This court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lake v Board of Environmental Protection,* 2001 ME. 18 ¶13, 989 A. 2d 1128. The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the witnesses and evidence, supported by substantial evidence in the record, should not be disturbed by this court. *Cotton v Maine Employment Security Commission,* 431 A. 2d 637, 640 (Me. 1981). The issue is not whether the court would have reached the same result the agency did, but whether the "record contains competent and substantial evidence that supports the result reached" by the agency. *Seider v. Board of Examiners of Psychologists,* 2000 ME 206, ¶ 8, 762 A.2d 551 *quoting CWCO, Inc. v. Superintendent of Insurance,* 1997 ME 226, ¶ 6, 703 A. 2d 1258, 1261.

An agency's interpretation of a statute that is administered by the agency and within its expertise is given no deference if unambiguous. *Whitney v. Wal-Mart Stores, Inc.*, 2006 ME 37, ¶¶ 22-23, 895 A.2d 309. "Statutory language is considered ambiguous if it is reasonably susceptible to different interpretations." *Scamman v. Shaw's Supermarkets, Inc.*, 2017 ME 41, ¶ 14, 157 A.3d 223 (internal citation omitted). If the statute is ambiguous, the agency's interpretation is given "great deference" and will be upheld unless the statute plainly compels a contrary result. *Dep't of Corrections v. Pub. Utils. Comm'n*, 2009 ME 40, ¶ 8, 986 A.2d 1047; *Champlain Wind LLC v. Bd. of Envtl. Prot.*, 2015 ME 156, ¶ 16, 129 A.2d 279.

## DISCUSSION

To qualify for the primary election ballot, a candidate for United States Senate must submit a petition containing the signatures of at least 2,000 registered Maine voters enrolled in the candidate's party. 21 M.R.S. § 335(2), (5)(B).[7] Each voter "must personally sign his name [on the petition] in such a manner as to satisfy the registrar of his municipality that he is a registered voter and enrolled in the party named on the petition." 21-A M.R.S. § 335(3). The voter's name must also be printed on the petition, either by the voter or the circulator. *Id.* The registrar or clerk of each municipality of voters' whose names appear on a petition must "certify

---

[7] The statute reads "petition" in the singular, but the filing may consist of hundreds of pages of petition forms containing voter signatures, as it did here.

10

which names on [the] petition appear in the central voter registration system as registered and enrolled voters in that municipality." 21-A M.R.S. § 335(7)(B). The municipal registrar or clerk may not certify any signatures not meeting the requirements of subsection 3. *Id.*

The person who circulated a petition for signatures ("the circulator") must, for each petition he or she circulated:

> verify by oath or affirmation before a notary public or other person authorized by law to administer oaths or affirmations that the circulator personally witnessed all of the signatures to the petition and that to the best of the circulator's knowledge and belief each signature is the signature of the person whose name it purports to be . . .; and each person is enrolled in the party named in the petition and is a resident of the electoral division named in the petition.

21-A M.R.S. § 335(7)(A).

The last subsection of 21-A M.R.S. § 335 frames the issue that is central to this appeal:

> For a candidate to qualify for the ballot, a nomination petition must meet all of the requirements of this section. If the circulator swears an oath or affirmation in accordance with section 7, paragraph A that the circulator reasonably believes to be true and accurate at the time the oath or affirmation is sworn and there is no proof of fraud or a knowingly false statement by the circulator, then the voters' signatures that do not meet the requirements of subsection 7, paragraph A may not be counted, but the petition is otherwise valid.

21-A M.R.S. § 335(9).

Mr. Linn concedes that fraud exists on multiple petitions. He contends, however, that there is no evidence of fraud by the circulators, and therefore it was

11

an abuse of the Secretary's discretion to invalidate the petitions in their entirety. Mr. Boyer, on the other hand, contends that since there was evidence of fraud, all petitions submitted by Mr. Linn should be invalidated, even those not discussed at the two Hearings or in either of the Secretary's rulings.

Subsection 9 of 21-A M.R.S. § 335 provides that where "there is no proof of fraud or a knowingly false statement by the circulator," only those signatures that do not comply with subsection 7(A) must be invalidated. It does not necessarily follow that if there exists proof of fraud or a knowingly false statement, all signatures on the petition must be invalidated. The Court interprets this provision to permit the Secretary to invalidate entire petitions when such proof of fraud or false statement is found to exist but does not mandate it.

Subsection 9 also uses the phrase "there is no proof of fraud or a knowingly false statement by a circulator." This phrase may be reasonably interpreted in one of two ways, depending on whether "by a circulator" only modifies "a knowingly false statement," or if it also modifies "there is no proof of fraud." The Court finds that either interpretation supports the Secretary's decision on these facts.

Mr. Linn contends that the Secretary's decision regarding the petition marked as Exhibit 25 should be extrapolated and its reasoning applied to the other petitions that were completely invalidated by the Secretary – asserting that since there is no proof of fraud by the circulator in those other petitions, they should have only been

partially invalidated. The Court disagrees. It is undisputed that there is fraud in these other petitions. Each of these petitions, marked as Exhibits 13-19, 21, 23, 24, and 36 contained multiple instances of fraudulent signatures. The Secretary determined in these petitions that the evidence of fraud was so significant that it undermined the validity of the circulator's oath, the reasoning being that with such a substantial number of fraudulent or questionable signatures, the circulator must have known that persons were signing who were not who they said they were. There is no evidence of the condition of the petitions at the time they left the circulators' hands, or regarding who handled these petitions once they left the circulators' hands.[8] The Court cannot speculate as to what set of circumstances led to the appearance of these fraudulent signatures. The only information in evidence is that the petitions were in the circulator's hands, then in the municipalities' hands, then the Secretary's. As Mr. Linn has argued, the fraud had to come from somewhere. As the Court cannot speculate as to where the fraud occurred, and the only person who was known to handle the petitions was the circulator, it was not an abuse of discretion for the Secretary to determine that there was fraud on the part of the circulator.

---

[8] The Secretary of State endeavored to find out who retained custody of the candidate petition forms after they were turned in by the circulators, but neither Mr. Linn nor campaign worker Matthew McDonald could provide any clarification as to what happened, other than to describe the process as "chaotic."

13

Ms. MacKay's circumstances with respect to Exhibit 25 are different from the other wholly invalidated petitions because she testified to the Secretary's satisfaction that the signatures she collected were not fraudulent. Mr. Boyer produced evidence of fraud sufficient for the Secretary to determine that the circulators' oaths were undermined. It was then Mr. Linn's responsibility to rebut that determination. In Ms. MacKay's case he did just that. The Secretary believed that there was no fraud in her circulator's oath and so he re-validated the remaining signatures. Stated otherwise, he exercised his discretion after finding fraud regarding Exhibit 25, to only invalidate the fraudulent part of that petition, leaving the part determined to be valid based on the circulator's testimony. With respect to the other wholly invalidated petitions, there was no evidence in the record from the circulators directly that they did not take any part in the fraud.

Mr. Boyer contends that upon a finding of fraud, all petitions submitted by Mr. Linn should be invalidated. The Court disagrees. Nowhere in 21-A M.R.S. § 335 or any other part of the statutory scheme is there a basis for the Secretary of State to invalidate non-fraudulent petitions due to fraud found in other petitions.

The case law presented by the parties demonstrates that large groups of petitions may be invalidated when there are provable issues regarding the oath taken by the circulator. In *Maine Taxpayers Action Network v. Sec. of State*, all petitions by a single circulator were invalidated because the circulator had stolen another

14

person's identity and signed the circulator's oath on all his petitions under the false name. 2004 ME 64, ¶ 18, 795 A.2d 75. All petitions from seven circulators in *Palesky v. Sec. of State* were invalidated because the circulators testified that they did not take their oath in front of the notary whose name appeared on their petitions. 1998 ME 103, ¶ 11, 711 A.2d 129. And finally, in *Birks v. Dunlap* the Secretary invalidated large batches of petitions because the signature of the notary who took the circulator's oath did not match the signature on file. BCD-AP-16-04 (Bus. & Consumer Ct. April 8, 2016, *Murphy, J.*). Notably, *Birks* concerned the invalidation of petitions based on the notary's signature, not the circulator's.

Here, there is no evidence in the record regarding the other petitions signed by the same circulators, or the rest of the petitions in general. Unlike in *Maine Taxpayers Action Network* where every oath was invalid because all of them were signed by an imposter, or in *Palensky* where the circulators testified that they did not swear their oaths in front of the notary whose name appeared on the petition, there is no similar, overarching issue with the circulators in this case.

As there is no support for Mr. Boyer's proposed extrapolation of fraud to other petitions, even those not discussed at the Hearings, the Secretary's decision not to invalidate these other petitions was not an abuse of his discretion.

Voting is a fundamental right in our democracy, and the public's trust in the integrity of the election process is a critical concern to the Court. *In re Opinion of*

15

*the Justices of the Supreme Judicial Court*, 2017 ME 100, ¶ 49, 162 A.2d 188. The purpose of subsection 9 to 21-A M.R.S. § 335 is to uphold the integrity of the system by not allowing it to be infected with fraud. Subsection 9 also contemplates a balancing of this concern with the voter's right to have his or her voice heard by allowing valid signatures to stand as long as there is no proof of fraud. The Court, in considering the balancing of these two interests, finds that the Secretary closely examined each petition and carefully exercised his discretion in determining where fraud existed and whether that fraud affected the remaining signatures on the petition.

## CONCLUSION

The entry is:

The decisions of the Secretary of State dated April 5, 2018 as supplemented on April 24, 2018 are AFFIRMED.

The appeal of Intervenor Max Patrick Linn is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference in accordance with M.R. Civ. P. 79(a).

DATED: April 26, 2018

William R. Stokes
Justice, Maine Superior Court

16

<u>Kennebec</u>
County

Docket No. AP-18-20

**J. Stokes**

Action: <u>Petition for Review</u>
80C

| David Boyer | vs. | Department of the Secretary of State |
|---|---|---|

Plaintiff's Attorney

Colton Gross, Esq.
PO Box 7030
Portland, ME 04112-7030

Defendant's Attorney

Phyllis Gardiner, AAG
6 State House Station
Augusta, ME 04333

Steven Juskewitch, Esq. (Intervenor)
3 Franklin Street
Ellsworth, Maine 04605

Date of Entry

| | |
|---|---|
| 04/11/18 | Petition for Review of Governmental Action, filed (04/10/18). s/Gross, Esq. |
| 04/13/18 | ORDER, Stokes, J. (04/13/18)<br>Scheduling Order<br>The Court held a telephone conference with counsel for the parties on April 12, 2018. The Court understands, and the parties agree, that based on applicable law the court must render a decision in this matter on or before April 25, 2018. Accordingly, the Defendant, shall endeavor to file the record on appeal on or before Wednesday April 19, 2018. Oral argument to be scheduled for Friday April 20, 2018 at 1:30 pm.<br>Copies to Parties/Counsel |
| 04/13/18 | Notice of Hearing<br>Oral Argument scheduled for 04/20/18 at 1:30 p.m. in courtroom #3<br>Copies to Parties/Counsel |
| 04/18/18 | Agency Record, filed. s/Gardiner, AAG |
| 04/19/18 | Brief of Petitioner, filed. s/Gross, Esq. |
| 04/19/18 | Motion to Take Additional Evidence, filed. s/Gross, Esq. |
| 04/19/18 | Respondent's Brief, filed. s/Gardiner, AAG |
| 04/20/18 | ORDER, Stokes, J.<br>Motion to Take Additional Evidence is GRANTED<br>Application of Max Linn to intervene is GRANTED<br>ORDERED that the Respondent Secretary of State take additional evidence in this matter as soon as possible, and preferably by Monday April 23, 2018. After taking such additional evidence, the Respondent may modify its findings and decisions and shall file with the court, to become part of the record in this matter, the additional evidence and eny new findings or decision. Oral Argument in this matter will be scheduled as soon as the court's |

calendar permits. The parties are requested to make themselves available for hearing upon the call of the Clerk of Courts.

04/23/18      Oral Argument set for April 25, 2018 at 11:00 a.m.
              Counsel notified via email on April 23, 2018

04/25/18      Supplement to Record, filed. s/Gardiner, AAG

04/25/18      Oral Argument, held.
              Phyllis Gardiner, Steve Jeskewitz, Colton Gross, and Josh Tardy present

04/26/18      DECISION AND ORDER ON Rule 80C Appeal, Stokes, J.
              The decisions of the Secretary of State dated April 5, 2018 as supplemented
              on April 24, 2018 are AFFIRMED.
              The appeal of Intervenor Max Patrick Linn is DENIED.
              The Clerk is directed to incorporate this Order into the docket by reference in
              Accordance with M.R.Civ.P. 79(a).
              Copies emailed to attys of record.

04/27/18      Transcript Order Form, filed.  s/Juskewitch, Esq.
              Emailed to Law Court and Transcript Office.

04/30/18      Notice of Appeal, filed. s/Juskewitch, Esq.
              With second Transcript Order Form
              Copy of Notice of Appeal, receipt of filing fee, docket record and Transcript Order Form
              sent to Law Court, Transcript Production, and Counsel.

04/30/18      File sent to Law Court

05/09/18      CD of Secretary of State Hearing

06/01/18      MANDATE/ORDER, Maine Supreme Judicial Court, (Decided 05/08/18)
              Given the arguments of the parties, Linn has not demonstrated that either the Secretary of
              State or the court committed an abuse of discretion or any error of law, or that the
              Secretary of State made findings unsupported by competent record evidence.
              Judgment Affirmed.

11/08/18      Notice of Removal of Exhibits sent

12/04/18      Acknowledgement of Receipt of Record
              Filed received back from Law Court on 12/04/18

01/07/19      Destroyed record